UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Christopher Ivey, | Case No. 12-cv-30 (DWF/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MSOP, Daniel Williams, Michael Glavan, Steven Sayovitz, William Gullickson, Scott Giannini, Tara Halverson, Kevin Dreher, and Matthew Dahl, | |
| Defendants. | |

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants Daniel Williams and Michael Glavan's Motion to Dismiss (ECF No. 63). This motion has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (ECF No. 22). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that Defendants' motion be **GRANTED IN PART and DENIED IN PART.**

## I. PROCEDURAL BACKGROUND

On January 5, 2012, Plaintiff Christopher Ivey filed a complaint alleging that the Minnesota Sex Offender Program ("MSOP") and its staff violated his civil rights after handcuffing and searching him following an incident in his room in November 2011.

(Compl., ECF No. 1). Ivey was able to effect service on MSOP, Steven Sayovitz, Scott Giannini, Tara Halverson, Kevin Dreher, Matthew Dahl, and William Gullickson. He was not able to effect service on Daniel Williams or Michael Glavan but filed a Motion for Enlargement of Time in Which to Have Defendants Served, seeking additional time to serve both of those Defendants (ECF No. 48). MSOP, Sayovitz, Giannini, Halverson, Dreher, Dahl, and Gullickson all moved to dismiss Ivey's complaint (ECF Nos. 33, 49).

This Court recommended that, with the exception of counts of 16 and 17, which alleged that Gullickson, Dreher, and Dahl violated Ivey's Fourth Amendment right to be free from unreasonable searches, that the motion to dismiss be granted in its entirety. (ECF No. 55). This Court also recommended that Ivey's Motion for Enlargement of Time be granted, and that Ivey be permitted to conduct limited discovery to determine the addresses of Glavan and Williams (ECF No. 55). Following the Court's Report and Recommendation, counsel for MSOP assisted Ivey in locating and facilitating service on both of those defendants (ECF No. 58).

The District Judge adopted as modified this Court's Report and Recommendation. (ECF No. 70). The District Judge concluded that Ivey also pled sufficient facts to allege a plausible excessive force claim against Gullickson, Giannini, and Halverson (ECF No. 70). The District Judge also determined that Ivey's Motion for Enlargement of Time was moot because Ivey had effected service on Williams and Glavan (ECF No. 70). The District Judge otherwise adopted this Court's recommendations (ECF No. 70).

Glavan and Williams moved to dismiss the complaint shortly after Ivey effected service on them (ECF No. 63). Before this Court issued its report and recommendation on

2

that motion, Ivey's case was stayed pending litigation in *Karsjens et al. v. Piper et al.*, Case No. 11-cv-3659 (DWF/TNL) (ECF No. 76). The stay was lifted on October 22, 2018 (ECF No. 82). The Court subsequently took Glavan and Williams's motion under advisement.

## II. FACTUAL BACKGROUND

This Court previously laid out the facts alleged by Ivey in its previous Report and Recommendation (ECF No. 55) and incorporates those facts by reference. A brief summary of the facts relevant to this motion follows here. On November 17, 2011, Ivey began causing damage to his room. Compl. ¶¶ 12–13. MSOP staff members responded and ordered Ivey to stop. Compl. ¶¶ 14–15. Because Ivey did not comply, a MSOP "A-Team" sprayed chemical irritant into his room. Compl. ¶ 17. Shortly thereafter, Ivey indicated that he was done causing damage. Compl. ¶ 17. MSOP ordered him to lay down with his hands behind his back. Compl. ¶ 18. Ivey complied. Compl. ¶ 18.

Williams, Glavan, and two other MSOP staff members entered the room and surrounded Ivey. Compl. ¶ 20. Williams applied his weight to Ivey's legs while Glavan pulled Ivey's right arm straight into the air, bent the right hand at the wrist and applied torque to his shoulder. Compl. ¶¶ 20-23. Ivey refers to this procedure as a "rear wrist lock." Compl. ¶ 23. Williams then handcuffed Ivey in a "chicken-wing" fashion by placing Ivey's hands behind his back, pulling his wrists close together, and facing his palms facing outward from each other. Compl. ¶ 26. The handcuffs were double locked by another MSOP staff member. Compl. ¶ 27. The handcuffs that Williams used were either "hinged," meaning there were no links between the cuffs or did not contain "sufficient linkage" between the cuffs, causing Ivey significant pain. Compl. ¶¶ 68-70. Ivey was left handcuffed

3

in the "chicken-wing" position until he consented to an "Unclothed Visual Body Search." Compl. ¶¶ 36–38, 41, 46-48, 50-52. He alleges that he suffered injuries to both of his wrists and his right hand, which caused him significant pain. Compl. ¶ 63.

Ivey filed suit, seeking compensatory and punitive damages. As relevant to Williams, Ivey asserts three claims of excessive force, punishment, and injury arising under the Fourteenth Amendment. Compl. ¶¶ 68–70. As to Defendant Glavan, Ivey asserts an excessive force claim arising under the Fourteenth Amendment, as well as a battery claim arising under Minnesota state law. Compl. ¶¶ 74–75. Defendants have moved to dismiss those claims under Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

### III. MOTION TO DISMISS IVEY'S CLAIMS

#### A. Legal Standard

When considering a Rule 12(b)(1) motion, courts "distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quotation omitted). "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citation and internal quotations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th

4

Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

    In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted). "[I]f the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim

forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Id*. (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B. Ivey's Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The "purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Public officials may be sued under 42 U.S.C. § 1983 in their official capacity, individual capacity, or both. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).

#### 1.     Injunctive Relief

As with claims against the other defendants, Ivey sues Glavan and Williams in their individual capacities and also requests that the Court declare certain MSOP policies that authorized their conduct unconstitutional and enjoin their enforcement. As the Court noted in its previous Report and Recommendation, which the District Judge adopted (ECF Nos. 55, 70), "section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005). For the same reasons as the Court concluded in its previous Report and Recommendation, the Court cannot amend Ivey's claims against

6

Williams and Glavan to include official capacity claims because courts enforce strict pleading requirements as to the capacity in which parties are sued. *Cf. Kelly v. Ramsey Cnty. Sheriff's Office*, 2009 WL 511695 *4, No. 08-cv-5028 (D. Minn. Feb. 27, 2009) (holding the rule that a plaintiff must clearly state that individual defendants are being sued in their individual capacities "is strictly enforced against a *pro se* plaintiff despite the generally liberal construction of pro se pleadings") (citations omitted). Accordingly, to the extent Ivey's complaint can be read to seek injunctive relief against Williams and Glavan, he fails to state a claim.

### 2. Monetary Damages

Ivey contends that Williams and Glavan used excessive force when handcuffing him. In particular, Ivey claims that Williams used excessive force by: (1) handcuffing Ivey too tightly; (2) handcuffing Ivey in the "chicken-wing" position and (3) using hinged handcuffs or handcuffs that did not have "sufficient linkage." Ivey claims that Glavan used excessive force by using the rear wrist lock technique to restrain Ivey. He asserts that in doing so, both Williams and Glavan violated his Fourteenth Amendment rights.

"The Constitution, itself, makes no specific reference to 'excessive force.'" *Martin v. Benson*, 2010 WL 2925116 *6, No. 09-195 (D. Minn. June 14, 2010), *report and recommendation adopted by* 2010 WL 2925104 (D. Minn. July 21, 2010), *aff'd* 407 Fed. Appx. 986 (8th Cir. 2011) (per curiam). "However, it is well established that the Constitution prohibits governmental authorities from using excessive force against individuals who are being held in custody." *Id*. For pre-trial detainees, this prohibition arises under the Fourteenth Amendment's Due Process Clause. *Kahle v. Leonard*, 477 F.3d

7

544, 550 (8th Cir. 2007). Claims raised by civilly committed individuals for excessive force are treated the same as pre-trial detainee claims. *Martin*, 2010 WL 2925116 at \*6.

To bring a claim for excessive force claim under 42 U.S.C. § 1983, "[a] pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The objective reasonableness test "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. In applying this standard, the Court considers the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. The Court "must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (citation and internal quotations omitted).

Here Williams and Glavan contend that their conduct was reasonable. They argue that Ivey had to be subdued by MSOP staff because he engaged in violent and destructive behavior and refused to comply with staff orders directing him to stop. They also note that there was glass all over the floor when they entered Ivey's room. Under these

8

circumstances, they argue that it was necessary for safety reasons for them to handcuff Ivey in the manner that they did.

Substantial force, including the tackling or tasering of a person, is justified if the person resists arrest, refuses to comply with the officer's commands, or otherwise poses a danger to the arresting officer or the general public. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011-12 (8th Cir. 2017).[1] But the "calculus change[s]" when the person becomes compliant. *Procknow v. Curry*, 26 F. Supp. 3d 875, 888 (D. Minn. 2014). A plausible excessive force claim exists if the facts in the complaint show that the officer used unnecessary force after the person was restrained and was no longer resisting officers. *Willenbring v. City of Breezy Point*, 2010 WL 3724361 *4, No. 08-4760 (D. Minn. Sept. 16, 2010). This principle holds true even if the person is suspected of committing a violent offense and previously posed a threat to the officers. *See Zantello v. Shelby Tp.*, 277 Fed Appx. 570, 574 (6th Cir. 2008). Force is least justified against "nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).

In this case, based on the facts as pled by Ivey, a reasonable factfinder could conclude that Ivey no longer posed a threat to MSOP staff when they entered his room. MSOP staff only entered Ivey's room after they sprayed him with a chemical irritant, he signaled that he was done damaging property, and he complied with their commands to lay

---

[1] The *Ehlers* court considered a claim of excessive force brought under the Fourth Amendment, whereas Ivey brings his claims under the Fourteenth Amendment. 846 F.3d at 1012. But "the objective indicia relevant to the excessive-force analysis under the Fourth Amendment guide [a] due-process inquiry" under the Fourteenth Amendment. *Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014).

down on his bed and place his hands behind his back. Immediately upon entry, MSOP staff members placed a Plexiglas shield on Ivey's back while Williams applied his weight to Ivey's legs, ensuring that he was restrained. At no point after MSOP entered Ivey's room did he resist. Given these circumstances, a reasonable factfinder could conclude that because Ivey was already subdued and restrained, it was unnecessary and excessive for Glavan to further restrain Ivey by using a rear wrist lock, for Williams to handcuff Ivey in the "chicken-wing" position, and for Williams to handcuff Ivey tightly by using hinged handcuffs. *See Willenbring*, 2010 WL 3724361 at *4 (concluding that officer used excessive force by using taser after suspect was already restrained); *Beaver v. City of Federal Way,* 507 F. Supp. 2d. 1137, 1140-45 (W.D. Wash. 2007) (determining that force was initially justified because suspect resisted arrest, but that subsequent use of force after additional officers arrived to help control scene was excessive). Discovery may reveal facts that show that MSOP staff needed to use additional force once they entered the room and restrained Ivey. But as pled, Ivey has met his burden to allege facts that show that both Defendants' conduct was objectively unreasonable.

     Williams also argues that the complaint against him should be dismissed for two additional reasons. First, he contends that, with regard to Ivey's claim that he handcuffed Ivey too tightly, that he acted reasonably because he and other MSOP staff members doubled checked to make sure that the handcuffs were not too tight and that they were double-locked. Second, with regard to Ivey's claim Williams handcuffed Ivey in the

10

chicken wing position, he argues that his conduct was reasonable because Ivey did not inform Williams that being handcuffed in this position was painful.[2]

Williams's arguments are not persuasive. Williams asks this Court to adopt what would essentially be bright-line rules holding that an officer cannot be held liable for excessive force by (1) handcuffing somebody too tightly so long as the officer or somebody else double checks the tightness of handcuffs or (2) if the person does not immediately inform the officer that his or her conduct caused the person to feel pain. But the objectively unreasonable standard set forth in *Kingsley* cannot be applied "mechanically." 135 S. Ct. at 2473. Instead, application of this standard must turn "on the facts and circumstances of each particular case." *Id*. (citation and internal quotations omitted). And though efforts made by an officer to temper or restrain the use of force and the officer's perception of the threat and injury are among the factors that should be considered when applying the objectively unreasonable standard, those factors are not "exclusive," but are mere illustrations of "the types of objective circumstances potentially relevant to a determination of excessive force." *Id*.

Each factor that Williams identifies above is certainly relevant to the ultimate determination of whether he handcuffed Ivey in a way that was objectively reasonable. *See, e.g.*, *Fry v. Smoker*, 2012 WL 1622656 *6, No. 11-3015 (E.D. Penn. May 9, 2012) (holding that the lack of complaints from person is factor that may be considered, but is not

---

[2] Williams's reliance on *Eason v. Anoka-Hennepin East Metro Narcotics & Violent Crimes Task Force*, No. 00-311, 2002 WL 1303023 (D. Minn. June 6, 2002) in support of this argument is misplaced. There, the court considered whether an officer's use of force was reasonable because the arrestee had pre-existing injuries. *Id*. at *5-*6. The court held that when using force, an officer must consider the person's pre-existing jury only if the officer had reason to know of the injury. *Id*. The court did not require that there be some indication of pain in all excessive force cases.

11

dispositive, in excessive force claim). But those factors must also be balanced against other factors present in this case, including, as discussed above, the fact that Ivey had previously been sprayed with a chemical agent, the fact that Ivey did not resist MSOP staff once they entered the room, and the fact that Ivey was already restrained when Williams handcuffed him. In fact, the record here shows that MSOP board members expressed concern that MSOP staff used a "barbaric" handcuffing process and that one board member, a retired law enforcement officer, said the "handcuffing process has a potential for use of excessive force when such [use] might not be necessary." (ECF No. 9). A reasonable factfinder could weigh these factors against those articulated by Williams and still conclude that he used excessive force.

In addition, discovery might reveal reasons why Ivey did not complain about the tightness of the handcuffs or the position in which his arms were placed. *See Fry*, 2012 WL 1622656 at *6 (listing "numerous reasons," ranging from "intimidation" to "not realizing the extent of the injury at the time of the handcuffing" as to why person might not complain about overly tight handcuffs). In fact, Ivey alleges in his complaint that it took some time after Williams applied handcuffs before numbness and severe pain set in. Accordingly, the Court cannot recommend that the motion to dismiss be granted on the basis of the two individual factors identified by Williams.

Finally, both Williams and Glavan argue that Ivey's excessive force claims must be dismissed because Ivey did not allege or present evidence showing that he suffered more than minor injuries. *See Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1008 (8th Cir. 2003) (holding that failure to demonstrate "any long-term or permanent physical injury as

a result of the handcuffs" defeats excessive force claim). But an excessive force claim may be successful even if the plaintiff suffers only a *de minimis* injury, unless the claim involves the use of handcuffs. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011); *see also Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (noting that a "single small cut" and "small scrapes" is sufficient to support an excessive force claim). Because the use of handcuffs "inevitably" results in some irritation or minor injury, a plaintiff must therefore allege something more to sustain an excessive force claim regarding the way in which he or she was handcuffed. *Chambers*, 641 F.3d at 907.

Here, regarding the placement of handcuffs, Ivey alleged that they were applied too tightly and that he felt numbing and tingling in his hands for a considerable period of time after the incident. As the Court noted in its previous Report and Recommendation, the improper application of handcuffs can pose a substantial risk to a person's health. *See, e.g.*, *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (affirming denial of motion for directed verdict where plaintiff showed a 1.3% permanent impairment of his upper right extremity and a 13% vocational disability as a result of nerve damage incurred as a result of handcuff application). Ivey also contends that he suffered potentially permanent nerve damage or injuries to his wrists and hand because of each Defendant's conduct, including those not part of this motion to dismiss. Given the procedural posture of this case, Ivey has alleged sufficient facts to give rise to a plausible injury resulting from the manner in which the handcuffs were applied to him and the use of the rear wrist lock. As the District Judge noted in his order adopting this Court's previous report and recommendation as modified (ECF No. 70), the medical documentation regarding the nature of Ivey's injuries is sparse.

But discovery will allow Ivey's claims of injury to be tested further and to ascertain whether his injuries resulted from the way he was handcuffed, the use of the rear wrist lock, or from other conduct that occurred after he was removed from his room. At this stage of the proceedings, the Court concludes that Ivey has pled facts sufficient to give rise to a plausible claim for injury.

### 3. Qualified Immunity

Williams and Glavan also contend that, should the Court determine that Ivey has pled a plausible Section 1983 claim, the Court should conclude that they are entitled to qualified immunity. "Qualified immunity is a defense only against a claim in one's individual capacity." *Bankhead v. Knickrehm,* 360 F.3d 839, 844 (8th Cir. 2004). Qualified immunity protects government officials from liability for civil damages when their "conduct does not violate clearly established constitutional rights of which a reasonable official would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Rights are clearly when established when "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

In this case, the Court recommends that Williams and Glavan not receive qualified immunity from Ivey's Section 1983 claim. If a factfinder determines that their use of force "was not objectively reasonable, then reasonable officers in [their] position would have likely understood that their conduct was violating [Ivey's] clearly established right to be free from excessive force." Order Adopting Report and Recommendation as Modified, ECF No. 70, at 12. Moreover, the "right to be free from excessive force in the context of an arrest is clearly established," as is the fact that the "use of force against a suspect who

14

was not threatening and not resisting may be unlawful." *Brown*, 574 F.3d at 499; *Shannon v. Koehler*, 616 F.3d 855, 865 (8th Cir. 2010). Based on the facts as alleged by Ivey in his complaint, the Court cannot conclude that Williams or Glavan should be immune from suit. Accordingly, the Court declines to recommend that claims against them be dismissed on this basis of qualified immunity.

### C. Ivey's Minnesota Law Claim Against Defendant Glavan

Under Minnesota state law, a claim of battery is defined as an intentional, unpermitted, offensive conduct with another. *Paradise City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980). Glavan does not dispute that his conduct satisfies each of those elements. He does contend, however, that Ivey's claim fails as a matter of law because Minnesota law permitted Glavan to use "reasonable force" on Ivey without his consent in order to compel Ivey's compliance with "reasonable requirements for [his] control, conduct, or treatment." *See* Minn. Stat. § 609.06, subd. 1(10). Because the Court has concluded that Ivey has alleged sufficient facts to give rise to a plausible claim for excessive force, the Court would also conclude that Ivey has alleged sufficient facts to establish that Glavan's use of force was unreasonable under Minnesota law.

Glavan also argues that he should be entitled to official immunity from Ivey's claim of battery. Under Minnesota law, the doctrine of official immunity "shields a public official from liability if he is charged by law with duties which call for the exercise of his judgment or discretion." *Grady v. Becker*, 907 F. Supp. 2d 975, 985 (D. Minn. 2012) (citation and internal quotations omitted). The arrest and handcuffing of an individual is typically

considered a discretionary act that is protected by this doctrine. *Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990).

Official immunity does not apply, however, if the conduct complained of was performed willfully or maliciously. *Grady*, 907 F. Supp. 2d at 985. "In the context of official immunity, willful and malicious are synonymous, as malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Id.* (citations and internal quotations omitted). "Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by the jury." *Johnson*, 453 N.W.2d at 42. In this case, given that there are sufficient facts in the complaint to give rise to an excessive force claim against Glavan, a jury could find he acted willfully or maliciously. *See Brown*, 574 F.3d at 501 (concluding that fact dispute on excessive force claim precluded grant of official immunity at summary judgment). Accordingly, the Court declines to recommend that Ivey's claim for battery be dismissed on the basis of official immunity.

### IV.   RECOMMENDATION

Ivey has brought suit under 42 U.S.C. § 1983 challenging the use of certain handcuff and restraint techniques during an incident in November 2011. He has brought suit against Williams and Glavan in their individual capacities. He seeks monetary damages and injunctive relief.

Ivey cannot seek injunctive relief against the individual defendants. But as for Ivey's monetary claims under federal and state law, he alleges sufficient facts to state excessive force claims against both Williams and Glavan, as well as a battery claim against Glavan.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Daniel Williams and Michael Glavan's Motion to Dismiss (ECF No. 63), be **GRANTED IN PART and DENIED IN PART** as follows:

    a. The motion be denied with respect to Counts 1, 2, 3, 7, and 8 insofar as Ivey alleges claims for monetary relief against Williams and Glavan in their individual capacities; and

    b. Counts 1, 2, 3, 7, and 8 insofar as Ivey alleges claims for injunctive relief against Williams and Glavan in their individual capacities, be **DISMISSED WITH PREJUDICE.**

Date: December 12, 2018     *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Ivey v. MSOP et al.*
Case No. 12-cv-30 (DWF/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).