RECEIVED
BY MAIL

MAY 06 2019

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher Ivey,

        Plaintiff,

  vs.

Daniel Williams, Michael Glavan,
William Gullickson, Scott Giannini,
Tara Halverson, Kevin Dreher,
and Matthew Dahl,

        Defendants.

Case No. 12-cv-30 (DWF/TNL)

**PLAINTIFF'S MOTION
TO COMPEL DISCOVERY
AND MEMORANDUM OF LAW**

Comes the Plaintiff, Christopher Ivey, and moves this Court, pursuant to

Fed. R. Civ. P. 36(a)(6), 37, and LR 37.1, to issue an Order compelling the

Defendants to comply with the Plaintiff's lawful and reasonable discovery

requests.

Plaintiff does not request a hearing on this Motion.

## BACKGROUND

On January 22, 2019, before this Court had even issued its Order regarding

the Defendants' final Motion to Dismiss, Plaintiff served the Defendants, through

their counsel, with Plaintiff's first set of discovery requests. Plaintiff stated in his

cover letter for those discovery requests that the 30 days in which to respond

SCANNED

MAY 0 7 2019

U.S. DISTRICT COURT ST. PAUL

would begin from the day said Order was issued.

On February 19, 2019, Judge Frank issued an Order adopting Magistrate Leung's Report and Recommendation in full. (ECF No. 86). This began the clock on the time for the Defendants to file an Answer and to comply with discovery.

Defendants filed their Answer to the Complaint on March 5, 2019. (ECF No. 87).

On March 21, 2019, exactly 30 days after Judge Frank's Order, Defendants served Plaintiff with their objections and written responses to Plaintiff's Request for Production of Documents and to a separate set of Interrogatories and a separate set of Requests for Admission for each of the seven named Defendants.

However, the first of set of documents produced by the Defendants in response to Plaintiff's Request for Production of Documents was not received by Plaintiff until April 22, 2019 – a full three months after Plaintiff first sent his discovery requests to the Defendants and almost two months after Judge Frank's Order of February 19, 2019.

With this first set of document production, counsel for the Defendants also sent a Stipulation for Protective Order and a Proposed Order. Some of the documents and items requested by Plaintiff through discovery are still being withheld from Plaintiff by the Defendants. Some of these items, but not all,

would apparently be provided to Plaintiff by the Defendants if this Court were to issue a protective order.  However, the stipulation proposed by the Defendants is absolutely unworkable.   And as far as the video recordings of the room extraction and subsequent trip to the High Security Area ("HSA") on the evening in question, Defendants are refusing to allow Plaintiff to even view such prior to trial, and then only if Defendants decide to allow such at that time.

On April 15, 2019 (before receiving the first set of documents and proposed Stipulation), Plaintiff sent a 13-page letter to Counsel for Defendants (attached hereto as Exhibit 1) pointing out deficiencies Plaintiff found in their written responses to the Interrogatories and their Admissions.  Therein, Plaintiff primarily objected to a.) the use of "boilerplate" objections without providing specifics;  b.) Defendants' failure to identify each document or communication being withheld due to their objections;  c.) their failure to "set forth in detail the efforts made to obtain the information" for any of the interrogatories to which they claimed they lacked the necessary information to make a full, fair, and specific answer to;  d.) failure to provide each Defendant's disciplinary records, each Defendant's education and work experience relating to the use of handcuffs or the use of force prior to their employment with MSOP, and the reason that the employment at MSOP of Defendants Glavan, Halverson, and Williams each

3

came to an end; and e.) Defendants' failure to personally answer the Interrogatories.

While the Defendants may yet provide Plaintiff with their personal responses to the first set of Interrogatories, provide more specific objections, and specifically identify any documents being withheld, Plaintiff must move this Court now due to time constraints. The Court's subsequent ruling on this Motion could then be more narrowly targeted depending on the extent to which the Defendants come into compliance with discovery by the time they file their Response to this Motion or prior to the Court's ruling thereupon.

Immediate action is required by this Court in order for discovery, including the likelihood of a further round of discovery by Plaintiff after he receives the evidence already requested, to be completed by the August 1, 2019 deadline. Pretrial Scheduling Order (ECF No. 88). Furthermore, Plaintiff intends to file a motion to amend the Complaint, using facts discovered through the evidence now being withheld by Defendants, and such motion is due "on or before June 17, 2019." *Id.* Furthermore, Plaintiff believes that the production (or non-production) of the requested documents and items may show spoliation of evidence by the Defendants and a Motion for Sanctions for any such spoliation is due on or before August 1, 2019.

Plaintiff wishes to avoid, if at all possible, any further delays in this action.

Therefore, Plaintiff respectfully moves this Court to act now.

## MEMORANDUM OF LAW

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958), and to narrow and clarify the issues in dispute, *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed.451 (1947).

In Plaintiff's Request for Production of Documents, he asked Defendants for, *inter alia*,:

2.    Any and all documents or communications relating to the contemplation of acquisition and use, purchase, and the use of "hinged"-type handcuffs on clients of the MSOP.

3.    Any and all documents or communications relating to any concerns or potential problems with the use of hinged handcuffs.

4.    Any and all documents or communications relating to any concerns or potential problems with handcuffs which are applied too tightly or which become too tight after being applied on a person.

7.    Any and all documents or communications relating to any concerns or potential problems with the practice of leaving a person handcuffed, especially behind their back, for long periods of time.

8.    Any and all documents or communications relating to any concerns or potential problems with the use of "stress positions" ("stress position" being generally defined as a procedure whereby a certain part or parts of a person's body are made to be held in the same position for a prolonged

period of time, which then becomes very uncomfortable if not unbearably painful).

9.     Any and all documents or communications relating to the use, whether authorizing such use, warning against, or forbidding such use by MSOP staff, of "stress positions" (see ¶ 8) on MSOP clients.

10.     Any and all documents or communications relating to any concerns or potential problems with the use of a "chicken wing" technique, whether referred to by that name or some other term, when handcuffing a client, whereby a client's hands are locked in wrist restraints behind the client's back with the backs of their hands facing toward one another and with the client's inner wrists and palms facing outwardly, 180 degrees away from each other, left palm facing directly to the client's left, right palm facing directly to the client's right (as depicted in the diagram at Complaint Exhibit 20).

14.     Any and all documents or communications between Regional Ombudsman Michael Woods, statewide Ombudsman Roberta Opheim, or any other representative of the Office of the Ombudsman for Mental Health and any employee or agent of the Minnesota Sex Offender Program which were created or transmitted between November 17, 2011 and March 9, 2012 in regards to Christopher Ivey in any context.

15.     Any and all documents or communications between Regional Ombudsman Michael Woods, statewide Ombudsman Roberta Opheim, or any other representative of the Office of the Ombudsman for Mental Health and any employee or agent of the Minnesota Sex Offender Program which were created or transmitted between November 17, 2011 and March 9, 2012 in regards to handcuffing procedures, handcuffing injuries, and/or placement of clients in the High Security Area in restraints for up to four hours, whether pertaining directly to Ivey or not.

16.     Any and all documents or communications relating in any manner to the visit by Regional Ombudsman Michael Woods to the Moose Lake facility on Friday, February 3, 2012, to include event letters submitted prior to the visit, records relating to which clients he met with during that visit, to include Christopher Ivey, any concerns expressed by Mr. Woods, and any follow-up communications in relation to Mr. Woods' visit to the Moose Lake facility that day.

20.     Any and all documents or communications to or from the Office of Health Facility Complaints sent or received between February 6, 2012 and March 9, 2012 in regards to handcuffing procedures, use of a "chicken wing" restraint technique (see ¶ 10), handcuffing injuries, and/or placement of clients in the High Security Area in restraints for up to four hours, whether pertaining directly to Christopher Ivey or not.

27.     Any and all performance reviews, job evaluations, reprimands, and restrictions for Defendants Matthew Dahl, Kevin Dreher, Scott Giannini, Michael Glavan, William Gullickson, Tara Halverson, and Daniel Williams during the entirety of their employment with the Minnesota Sex Offender Program.

28.     Any and all documents or communications relating to any and all complaints made against Defendants Matthew Dahl, Kevin Dreher, Scott Giannini, Michael Glavan, William Gullickson, Tara Halverson, and Daniel Williams at any time during their employment at the MSOP, whether said complaints were made by a client, another MSOP employee, or an outside person or agency, and the resolution of each complaint, to include any disciplinary actions.

29.     Any and all documents or communications relating to any and all concerns expressed or complaints made against Defendants Matthew Dahl, Kevin Dreher, Scott Giannini, Michael Glavan, William Gullickson, Tara Halverson, and Daniel Williams at any time during their employment elsewhere, other than at the MSOP, which had anything to do with allegations of harm to another person, unnecessarily causing physical pain to another person, neglect of another person, the use of excessive force, or the use or misuse of restraints, and the resolution of each concern or complaint, to include any informal reprimand, corrective memo, disciplinary action, or additional instruction.

30.     All video footage, to include that from handheld video cameras and fixed facility security cameras on Unit Omega and the High Security Area, which recorded the incident involving Plaintiff Christopher Ivey on the evening of November 17, 2011, to include any and all activity on or in the immediate vicinity of Unit Omega during the incident, the subsequent extraction of Ivey from Omega room number 203, the movement of Ivey to the High Security Area, the search of Ivey's person by MSOP staff inside of

the HSA, Ivey's placement into camera room PI-N102 in the HSA, and the holding of Ivey in that camera room for approximately two hours or longer. This footage, or a significant portion thereof, was collected and retained by MSOP staff. OSI staff employed by MSOP subsequently compiled at least a portion thereof (Case # 2011-0392, ICR # 11206101; Exhibits 2A & 2B thereto) and submitted such to the Carlton County Attorney's Office as part of the criminal complaint filed against Christopher Ivey for damage to property (Case # CR-12-1185).

Defendants' attorney responded with boilerplate objections for just about every single discovery request submitted by Plaintiff. Additionally, Defendants objected on various grounds to the document requests outlined above.

For example, to Document Request No. 30, Defendants responded:

"Defendants object to this request on the grounds that it is vague; it is overbroad; it is unduly burdensome; it seeks information that is not relevant or proportional to the needs of the case; it seeks documents protected by the attorney-client privilege and work product privilege; and it seeks documents that are protected from disclosure to Plaintiff because it constitutes private data on individuals other than Plaintiff, nonpublic security data under Minn. Stat. § 13.37, subds. 1(a) and (2), or is otherwise protected by applicable law from disclosure to Plaintiff. Subject to and without waiving the general objections above and these specific objections, Defendants state that pursuant to Minn. Stat. § 13.37, subds. 1(a) and (2), Defendants will not produce a copy of any recording from a handheld camera purportedly showing the incident on Unit Omega on November 17, 2011 involving Plaintiff, but will make any such recording available for Plaintiff to view if and when the Court issues a suitable protective order."

Defendants implied in their response to Document Request No. 30, and during Plaintiff's telephone conversation with Counsel for the Defendants on March 29, that Plaintiff would be able to view the video footage once a protective

order was in place. However, upon receiving Defendants Stipulation for Protective Order and Proposed Order,[1] Plaintiff sees that he was misled.

## A.     Defendants' Proposed Protective Order.

Plaintiff finds the Proposed Protective Order submitted to him by Defendants' attorney to be absolutely unworkable.

For example, paragraph 3 states, in relevant part:

"3.     Access to any Confidential document shall be limited to the following, subject to any further restrictions outlined within this protective order: ... f. Plaintiff, only to the extent allowed by paragraph 4; Plaintiff shall not have access to information that is nonpublic security information under Minn. Stat. § 13.37, except that Plaintiff may view certain MSOP security video as set forth at paragraph 8.

4.     Plaintiff's access to Confidential information is limited to Confidential information of which he is the data subject. This Protective Order does not give Plaintiff access to data protected from disclosure by Minn. Stat. § 13.43, subd. 5a.

8.     Copies of documents containing or comprising security information, which is nonpublic data under Minn. Stat. § 13.37 and which may include *MSOP security video, shall not be provided to Plaintiff* during discovery, provided to Plaintiff during a deposition (including if it is used as an exhibit or otherwise), or provided to Plaintiff if it is filed with the Court; however, Defendants *may* allow Plaintiff to view MSOP security video relevant to this case during a deposition or trial, and *if any such video is discoverable or filed with the Court by Defendants,* Defendants shall give Plaintiff reasonable access to view the MSOP security video upon a request by Plaintiff. If MSOP security video is filed with the Court as an exhibit,

---

[1] The Proposed Order mirrors the Stipulation for Protective Order, except that the first line ("The parties agree that the Court may enter the following order:") is omitted.

Defendants shall serve it upon Jessica Geil, Legal and Records Director, or her designee, Minnesota Sex Offender Program, 1111 Highway 73, Moose Lake, Minnesota 55767, who shall arrange to make it available to Plaintiff for viewing through MSOP staff persons upon Plaintiff's request made with reasonable notice.  Service, as set forth above, of a MSOP security video exhibit upon Jessica Geil or designee for Plaintiff's viewing shall satisfy the service requirements of the Local Rules of this District requiring service of any MSOP security video exhibits upon Plaintiff.  Defendants, including those not currently employed by MSOP, shall have access to nonpublic MSOP security information relevant to this litigation, including but not limited to MSOP security video." (emphasis added).

Per Defendants' Proposed Protective Order, Defendants could withhold any damaging evidence from Plaintiff simply by declaring it "Confidential" or "nonpublic security information," Defendants *would* withhold any "Confidential" information in which Plaintiff is not directly named (*see* ¶ 4 of the Proposed Protective Order, *supra*: "Plaintiff's access to Confidential information is limited to Confidential information of which he is the data subject."), relevant security information and video footage would not be provided to Plaintiff during the discovery process, relevant video footage would only be submitted into evidence at trial if *Defendants* so choose to enter it, and then, at that late stage of the proceedings, "if" the Defendants chose to file such, Defendants "may" allow Plaintiff to view (though Plaintiff would likely not be allowed to start/stop or otherwise control the playback functions of the device on which the video is

being displayed to him) whichever portion(s) of the video footage that Defendants chose to submit into evidence.

Such a proposed Protective Order is absolutely unworkable (if not outright insulting). It is not necessary and is only put forth by the Defendants to maintain the secrecy of any wrongdoing on their part and to frustrate Plaintiff's reasonable efforts to effectively litigate his claims towards a positive resolution. Not only is the Protective Order as proposed unfair, it is contrary to established law.

**B.      Federal law, not state law, controls federal discovery practice.**

Defendants' reliance on state law is misplaced. The Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. ch. 13, does not control discovery in federal courts.

"[D]ecisions from this Court have clearly explained that the MGDPA cannot be used as a basis to frustrate the discovery process in a lawsuit filed in federal court." *R.S. v. Minnewaska Area Sch. Dist. No. 2149,* 12-cv-588 (MJD/LIB), 2013 U.S. Dist. LEXIS 200265 (D. Minn. Mar. 20, 2013). "[I]t is improper for Defendants to withhold information from proper discovery in a federal lawsuit purely on grounds that it is protected under the MGDPA." *Scheffler v. Molin,* 11-cv-3279 (JNE/JJK), 2012 U.S. Dist. LEXIS 117492, 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012). The MGDPA does not "trump the Federal Rules of Civil

Procedure, which define what information is discoverable in a federal lawsuit such as this." *Id.* "It is axiomatic that discovery in federal court is governed not by state rules or statutes, but by the Federal Rules of Civil Procedure." *Her v. Paulos*, 11-cv-808 (PAM/TNL), 2012 U.S. Dist. LEXIS 179928, 2012 WL 6634777, at *5 (D. Minn. Dec. 20, 2012).

Furthermore, a search using LexisNexis reveals that in *not one single case,* state or federal, was Minn. Stat. § 13.37 relied upon to withhold security video, policies, or other information during discovery.

## C.     Applicable federal discovery practice.

Fed. R. Civ. P. 26(b)(1) allows the Plaintiff to discover any nonprivileged matter that is relevant to any claim. The relevance standard is construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Fed. R. Civ. P. 26(b)(5)(A) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a

manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

To the extent that any of the documents or items requested by Plaintiff are privileged, the Defendants have not complied with Fed. R. Civ. P. 26(b)(5)(A). *See* attached Letter, at p. 6, ¶¶ 3-4; p. 7, ¶ 3; p. 9 ¶ 4. Also, after the Letter was written, Plaintiff received the first set of documents produced by the Defendants in which many of the documents contain redactions and 10 pages are completely redacted (*i.e.*, the whole page is a black rectangle), but the Defendants fail to cite which privilege is being asserted for each specific instance of redacted information, nor do they at all identify the ten fully redacted pages.

## D.   Defendants' claim of "security" does not warrant denial of discovery.

"[D]iscovery may not be denied on the basis of an unsubstantiated assertion by counsel that disclosure of requested information might impair facility security." *Messa v. Woods*, 2008 U.S. Dist. LEXIS 46122, 2008 WL 2433701, at *2 n.1 (N.D.N.Y. June 12, 2008). Instead, a claim that disclosure of requested documents would compromise facility security must be "supported by an affidavit from an appropriate department of corrections official, setting forth specific facts supporting the claim of security." *Medina v. Hunt*, 2008 WL 2228962, at *1 (N.D.N.Y. May 29, 2008).

The documents and communications Plaintiff has requested relate to handcuffing procedures, use of hinged handcuffs, Unclothed Visual Body Search procedures, the wrist lock/arm bar tactic, etc. Some of the document requests objected to by the Defendants "on the grounds of being nonpublic security data" have absolutely nothing to do with security information. And for the requested documents and communications which do relate to security information, the disclosure of such documents and communications is not "likely" (*i.e.,* more probable than not) to jeopardize the safety and security of the facility. There is no justification for the Defendants to withhold this information from the Plaintiff.

**E. Defendants' responses to Plaintiff's discovery requests are otherwise inadequate.**

In his April 15, 2019 Letter to the Defendants (attached hereto as Exhibit 1), Plaintiff outlined a number of deficiencies he found with their first set of Responses. In order to save time and to avoid unnecessarily lengthening this present Motion through repetition, Plaintiff respectfully directs this Court to the contents of that Letter.

**F. Filing of documents and evidence under seal.**

In paragraph 8 of their Proposed Protective Order, *supra,* Defendants imply, through their reference to "the service requirements of the Local Rules of

this District requiring service of any MSOP security video exhibits upon Plaintiff," that Defendants will be seeking to file certain exhibits under seal. *See* LR 5.6(a)(1) (Filing Documents Under Seal in Civil Cases, "A document may be filed under seal in a civil case only as provided by statute or rule, or with leave of court.").

This Court has often stated that "[t]he sealing of ... exhibits ... is strongly discouraged" and there should be "compelling reasons" for doing such. *Otterness v. Andersen Windows Corp.*, 17-cv-4767 (WMW/TNL), 2018 U.S. Dist. LEXIS 149822 (D. Minn. Aug. 30, 2018); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (the public has a common-law right to inspect and copy judicial records).

The Defendants should not be allowed to engage in their wrongdoing under the cloak of secrecy. Plaintiff asks that this Court deny the filing of any documents or evidence under seal except where Defendants can establish "compelling reasons" for each document or evidentiary item to be sealed.

## CONCLUSION

While the Parties might still eventually arrive at a stipulation agreeable to both sides (though it seems unlikely, due to the Defendants extremely defensive stance and already employed delay tactics), Plaintiff can wait no longer to bring

15

this Motion. Due to the Defendants already considerable delays in providing the first set of requested discovery materials and then the formulation of an unacceptable stipulation regarding a protective order, this Motion must be brought immediately by Plaintiff so that the Defendants will have a chance to respond to this Motion, if they choose to do such, and for this Court to then take the matter into consideration and make a ruling. Hopefully this could be achieved before the end of May so that Plaintiff could view the requested security videos and receive the additional responses and withheld discovery materials by early June, so that Plaintiff could then, based on those materials, move to amend his Complaint before the June 17, 2019 deadline for such and/or conduct one last round of discovery upon the Defendants by the end of June in order to allow for the 30 days needed for them to respond and to still have discovery completed by the August 1, 2019 deadline set by this Court. (ECF No. 88). This matter has already been delayed enough over the years and Plaintiff is not looking to have it extended any further. So for that, Plaintiff asks for an expedient response from the Defendants to this Motion and that an expedient ruling on this matter then be made by this Court.

Plaintiff further asserts that Counsel for the Defendants has engaged in unfair and time-consuming gamesmanship. This Court has the authority to

address such "gamesmanship" in the discovery process by state officials who "maintain that certain important materials cannot be produced in discovery to an inmate who proceeds without counsel." *Ward v. Smith,* 721 F.3d 940, 943 (8th Cir. 2013). Due to Defendants' intentional delays throughout the discovery process to this point and the additional amount of time that Defendants have caused Plaintiff to exert in attempting to resolve Defendants' deficiencies, Plaintiff asks that this Court grant him an additional 10 interrogatories per named Defendant. *See* Proposed Order, *attached hereto,* at ¶ 13.

Dated: May 2, 2019

Christopher Ivey, *pro se*
1111 Highway 73
Moose Lake, MN  55767-9452