Christopher Ivey
1111 Highway 73
Moose Lake, MN  55767-9452

April 15, 2019

Brandon Boese
Assistant Attorney General
1100 Bremer Tower
445 Minnesota Street
St. Paul, MN  55101-2128

Motion to Compel
Exhibit
1

Civil File No.:  *Ivey v. Williams, et al.*, 12-cv-30 (DWF/TNL)

SCANNED
MAY 07 2019
U.S. DISTRICT COURT ST. PAUL

Dear Mr. Boese:

Thank you for your recent letter dated April 1, 2019 memorializing our telephone conversation of March 29, 2019.  I concur with your summary of our discussions had during that call.  My only concern is the Defendants' additional delay in producing the requested documentation.  I provided the Defendants with my discovery requests over two months ago, already giving them double the usual time to respond to such requests.  Even if additional documentation is currently being sought, there is no reason to delay producing me with the documents and items already known to the Defendants and/or in the possession of their counsel.

Enclosed herein please find a Health Services Provider Note and chart entries relating to my annual physical conducted on December 15, 2011. (Reminder: this is private and confidential health data and I do not authorize its release without further consent).  This information now allows me to modify my responses in Plaintiff's Responses to Defendants' Discovery Requests at pages 14 and 41 to name Victoria P. Aldridge as the person performing the physical.  Ms. Aldridge no longer works at MSOP.  Upon information and belief she currently resides in Duluth, MN, and I think she is likely retired.

This last data request left out information regarding my examination by the Physical Therapist on April 9, 2015.  I resubmitted my request and found out that there is one page responsive to my request.  I am again awaiting copies and should have that in about a week.

I am also writing this letter with concerns regarding Defendants' Answer to the Complaint.  I am further writing this letter in search of more complete responses by the Defendants to my first set of discovery requests.

### Answer to the Complaint
In the Answer to the Complaint [ECF No. 87], Defendant Williams denies (at ¶ 26 on lack of sufficient knowledge or information, then just flat out denies such at ¶ 69) that he applied the handcuffs on my wrists in an inverse manner (*i.e.*, with palms facing away from one another, as depicted in Compl. Ex. 20 at Figure A).  Yet in Defendant Williams' response to Williams Interrogatory No. 4, he asserts that "[t]he way he handcuffed Plaintiff the night of the incident

1

alleged in the Complaint is the way he was trained to do so." How can Williams in one instance claim that he applied the handcuffs in the manner he was trained, then turn around and deny that he lacks sufficient knowledge or information as to which direction he turned my hands when applying the handcuffs? (Additional affidavits and/or testimony from various MSOP clients will show that the "chicken wing" or inverse hand positioning during handcuffing by A-team members has been the norm for a number of years, and not done by mistake or occasional happenstance.). Furthermore, in ¶¶ 26 & 69 of their Answer, Defendants Halverson, Dreher, and Dahl also claim to lack sufficient knowledge or information as to which direction my hands were handcuffed. Yet in their incident reports (and in subsequent filings to the Court in this matter) each one of these Defendants claimed that they checked the handcuffs to assure that they were "applied properly" (Compl. Ex. 4, Dreher Incident Report at p. 1, ¶ 3, li. 2-3) and "appropriately placed" (Compl. Ex. 5, Halverson Incident Report at li. 8). *See also* Dahl Incident Report #620827082 at p. 1, ¶ 1 ("SC Halverson and SC Dreher checked to assure that client's wrist restraints were applied properly."). If these Defendants so thoroughly checked the "proper placement" of the handcuffs on me that evening then certainly they are aware of which direction my hands were facing because they would have been in the proper direction. If the inverse positioning (*i.e.*, palms opposing) was the correct positioning, then they must admit that may hands were locked in that position, which they already have stated that they each visually (and some manually) checked that evening.

It appears uncontested – and sworn testimony, MSOP policies, reports, and the video evidence should certainly bear out – that Plaintiff was left handcuffed behind his back for the duration of the time he was held in camera room PI-N102. Yet the Defendants refuse to admit such in their Answer. *See* Compl. & Answer to ¶¶ 26, 36, 70.

Defendant Dahl's claim in ¶ 41 that Plaintiff "grabbed his [own] genitalia" while handcuffed behind his back in camera room PI-N102 is physically impossible! While Plaintiff has already stated that he did lift his leg in staff's direction (in an effort to sate the Security Counselor's incessant need to see Plaintiff's private areas, *i.e.*, repetitively asking Plaintiff if he would comply with an unclothed visual body cavity search) he certainly did not, and *could not*, "grab" his own genitalia. This is a false statement by Defendant Dahl.

In the Answer to ¶ 39, Defendant Giannini claims that he lacks sufficient knowledge or information to admit or deny the facts stated by Plaintiff that, while being held in HSA camera room PI-N102, he "paced the floor, occasionally hitting his head and shoulder on a piece of Plexiglas which covered the outer window slot, kicking the door, and hitting the door with his shoulder." Compl. ¶ 39. Yet in his Incident Report from that evening, IR#620827091, Giannini stated that he had me under "continuous observation via camera" and activated an ICS when he "observed [Plaintiff] banging his forehead several times against the plexi-glass shield over the exterior window in his High Security Area (HSA) room." Also, Defendant Giannini made the following notations in the HSA communications logbook: "1836 - Ivey could be seen via camera kicking the wall in his room, hitting his shoulder on the wall and door and 'headbutting' the lexan shield over his exterior window. OD notified."; "1848 - Ivey kicking the door in his room."; "1853 - Ivey banging his head on the window shield in his room. ICS initiated." It is questionable at the least, dubious at most, for Giannini to say he lacks sufficient information to confirm or deny my recitation of my behaviors at that point in time in ¶ 39 of the Complaint. Furthermore, Defendant Dahl and Halverson's assertion that I had been banging my head against the room's metal door is not confirmed by either the person doing the behavior (myself) nor the

2

person who had a direct view into the HSA camera room (Giannini). Their statements as to banging my head against the metal door are incorrect.

**Discovery Responses**
While my requests for admission were specifically worded in a manner to avoid harassment of the Defendants and my motive for requesting such admissions was proper, the Defendants made copious "boilerplate" objections to each of my various requests to them.

"The key requirement in both Rules 33 and 34 is that objections require 'specificity.'" *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 184 (N.D. Iowa 2017); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with *specificity*. Any ground not stated in a timely objection is *waived* unless the court, for good cause, excuses the failure.") (emphasis added). "[T]he mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection. On the contrary, the party resisting discovery 'must show specifically how … each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982) (citation omitted); *Hodgdon v. Northwestern University*, 245 F.R.D. 337, 340 (N.D. Ill. 2007) ("boilerplate objections are meaningless and insufficient"); *Terracon Consultants Inc. v. Drash*, 2013 U.S. Dist. LEXIS 53800, 2013 WL 1633572, at *1 (D. Kan. Apr. 16, 2013) (noting that general objections are considered "overly broad and worthless unless the objections are substantiated with detailed explanations"). "In other words, 'merely assert[ing] boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. … without specifying how each [interrogatory or] request for production is deficient and without articulating the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests' simply is not enough." *Liguria Foods*, 320 F.R.D. at 185 (quoting *St. Paul Reinsurance Co., Ltd.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000)).

"Repetitive form objections are not favored." *Clark v. Baka*, 2008 U.S. Dist. LEXIS 84570, 2008 WL 4531708, at *13 (E.D. Ark. Oct. 9, 2008). "For example, when objecting that a request is not relevant, explain why. When objecting that a request is burdensome or oppressive, explain how. Consider submitting affidavits or other evidence to reveal the nature of the burden." *Id.*; *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("general or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections").

The Defendants' "use of blanket, general objections to specific discovery requests is both inappropriate and futile. Boilerplate objections that discovery requests are 'overb[roa]d and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence,' are – and have been for decades – improper and a violation of the letter and spirit of the Federal Rules." *Kirby v. United Am. Ins. Co.*, 2009 U.S. Dist. LEXIS 138938 [WL] (E.D. Ark. Feb. 13, 2009) (citation omitted). "[B]oilerplate, generalized objections are not only improper, but also are tantamount to no objection at all." *Id.*

"'If Defendant lacks necessary information to make a full, fair, and specific answer to an interrogatory, she must state so under oath and Defendant must also set forth in detail the efforts made to obtain the information.'" *Murphy v. Piper*, 16-cv-2623 (DWF/BRT), 2017 U.S. Dist.

LEXIS 193446, 2017 WL 5633096 (D. Minn. Nov. 22, 2017) (quoting Magistrate Judge Becky R. Thorson's Aug. 21, 2017 Order). "If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available." 8B Charles A. Wright et al., *Federal Practice and Procedure* § 2177 & n.5 (3d ed. 2010).

The Defendants have failed to "set forth in detail the efforts made to obtain the information" for any of the interrogatories to which they claimed they lacked the necessary information to make a full, fair, and specific answer to.

### **Vagueness**

Defendants objected on the grounds of vagueness to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Dahl Admission Nos. 3, 5, 6, 7, 8, 10, 12, 13, 15, 16, 17; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14; Dreher Admission Nos. 3, 5, 6, 7, 8, 10, 12, 14, 15, 16, 17; Giannini Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Giannini Admission Nos. 5, 7, 8, 9, 11; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 7, 8, 9, 10, 11, 12; Glavan Admission Nos. 3, 4, 5, 6, 7, 8, 9, 10; Gullickson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Gullickson Admission Nos. 3, 5, 6, 9, 10, 11; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Halverson Admission Nos. 7, 8, 9; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16; Williams Admission Nos. 3, 4, 5, 6, 7, 8.

The party objecting to discovery as vague or ambiguous has the burden of showing such vagueness or ambiguity. *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000). A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories." *Id.*; *Symons Int'l Grp. v. Cont'l Cas. Co.*, 2017 U.S. Dist. LEXIS 157344, 2017 WL 4269880 (S.D. Ind. Sept. 26, 2017) ("Since the common sense and ordinary meanings of the[se] words are readily ascertainable, they are not ambiguous or vague in th[e] context [of this interrogatory]."). "If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue." *Id.*

All of the words and phrases that Defendants object to are either commonly used in the English language or specifically defined within Plaintiff's requests and previous filings as those words or phrases relate to this litigation. *L.A. News Service v. CBS Broad., Inc.*, 305 F.3d 924, 942 (9th Cir. 2002) (Silverman, J., dissenting in part) ("[Plaintiff] propounded twenty-one requests for admissions. [Defendant] objected to every single one of them. Nineteen of the twenty-one requests were objected to as 'vague and ambiguous.' We should not encourage litigants to use disingenuous semantic quibbles to evade disclosure."); *AKH Co. v. Universal Underwriters Ins. Co.*, 2014 U.S. Dist. LEXIS 90790, 2014 WL 2991130 (D. Kan. July 3, 2014) ("The Court finds that the terms 'embody,' 'communications,' 'relating to,' and 'related' are not *per se* vague and ambiguous. [The responding party] can, and should, employ the ordinary, common sense definitions of these words in the context of the discovery requests at issue. [The responding party's] objections are substantively overruled. [The responding party] is directed to provide supplemental responses without these objections.").

**Overbreadth**
Defendants objected on the grounds of overbreadth to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14; Giannini Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 7, 8, 9, 10, 11, 12; Gullickson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16.

**Burdensome**
Defendants objected on the grounds of being "unduly burdensome" to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31.

"All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 684-85 (D. Kan. 1991). Defendants do not explain how each, or any, of Plaintiff's document requests are "unduly burdensome." *Doe v. Nebraska,* 788 F.Supp.2d 975, 981 (D. Neb. 2011) ("A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required.").

**Relevancy / Proportionality**
Defendants objected on the grounds of relevancy and/or not being proportional to the needs of the case to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Dahl Admission Nos. 14, 15, 16, 17; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14; Dreher Admission Nos. 13, 14, 15, 16; Giannini Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 7, 8, 9, 10, 11, 12; Gullickson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Gullickson Admission Nos. 10, 11; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16.

Defendants fail to explain or provide detail for any of these objections.

"[Plaintiff] properly asserts that it, not [Defendant], defines the theory of its own case and that [Defendant] may not unilaterally determine whether information is relevant." *Wollesen v. West Central Cooperative,* 2018 U.S. Dist. LEXIS 20864, 2018 WL 785863 (N.D. Iowa Feb. 8, 2018); *Sentis Group, Inc. v. Shell Oil Co.,* 763 F.3d 919, 926 (8th Cir. 2014) (a party "cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case."). "Notably, the party resisting discovery bears the initial burden of showing that the discovery sought is irrelevant; the burden then shifts back to the requesting party to show that the discovery is relevant." *Id.*

**Overbreadth**
Defendants objected on the grounds of overbreadth to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14; Giannini Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 7, 8, 9, 10, 11, 12; Gullickson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16.

**Burdensome**
Defendants objected on the grounds of being "unduly burdensome" to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31.

"All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 684-85 (D. Kan. 1991). Defendants do not explain how each, or any, of Plaintiff's document requests are "unduly burdensome." *Doe v. Nebraska,* 788 F.Supp.2d 975, 981 (D. Neb. 2011) ("A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required.").

**Relevancy / Proportionality**
Defendants objected on the grounds of relevancy and/or not being proportional to the needs of the case to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Dahl Admission Nos. 14, 15, 16, 17; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14; Dreher Admission Nos. 13, 14, 15, 16; Giannini Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 7, 8, 9, 10, 11, 12; Gullickson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Gullickson Admission Nos. 10, 11; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16.

Defendants fail to explain or provide detail for any of these objections.

"[Plaintiff] properly asserts that it, not [Defendant], defines the theory of its own case and that [Defendant] may not unilaterally determine whether information is relevant." *Wollesen v. West Central Cooperative,* 2018 U.S. Dist. LEXIS 20864, 2018 WL 785863 (N.D. Iowa Feb. 8, 2018); *Sentis Group, Inc. v. Shell Oil Co.,* 763 F.3d 919, 926 (8th Cir. 2014) (a party "cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case."). "Notably, the party resisting discovery bears the initial burden of showing that the discovery sought is irrelevant; the burden then shifts back to the requesting party to show that the discovery is relevant." *Id.*

**Attorney-Client Privilege / Work Product Privilege**
Defendants objected on the grounds of attorney-client privilege and/or work product privilege to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14; Giannini Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 7, 8, 9, 10, 11, 12; Gullickson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16.

The attorney-client privilege attaches only when the attorney acts in the capacity of legal advisor, either providing legal advice or such advice being solicited from the attorney. *Diversified Indus. Inc. v. Meredith*, 572 F.2d 596, 601-602 (8th Cir. 1977). Simply copying in an attorney on an e-mail, letter, or other communication does not automatically render protection to the communication between an attorney and client. *Bartholomew v. Avalon Capital Group, Inc.*, 09-cv-1279 (MJD/AJB), 278 F.R.D. 441, 448 (D. Minn. Apr. 28, 2011) ("a party cannot make a communication privileged simply by including an attorney in the communication"); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer."); *ADT Security Services, Inc. v. Swenson*, 07-cv-2983 (JRT/AJB), 2010 U.S. Dist. LEXIS 74987, 2010 WL 2954545, at *4 (D. Minn. Jul. 26, 2010) (the mere fact that a party "copied counsel on the email does not render it a privileged communication.").

The party asserting the privilege as a protection from discovery bears the burden of establishing that the privilege is applicable. *In re Grand Jury Proceedings*, 655 F.2d 882, 887 (8th Cir. 1981). "A party receiving a discovery request who asserts a privilege or work product protection but fails to disclose the nature of that claim and provide a description is at risk of waiving the privilege or protection. Courts consistently have held that such a party is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege or work product claim." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2464 (3d ed. 2011); *see, e.g., In re Grand Jury Subpoena*, 274 F.3d 563, 575-76 (1st Cir. 2001) ("courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log. A party that fails to submit a privilege log is deemed to waive the underlying privilege claim."); 9 James Wm. Moore, et al., *Moore's Federal Practice* § 45.61[1] (3d ed. 2014) ("The description of the withheld materials is [ ] a required element, and a claim of privilege made without the description of the materials is insufficient.").

If the Defendants refuse to specifically identify the requested documents and information which it claims are privileged, such failure will act as a waiver of the attorney-client privilege. *Eureka Financial Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991). A defendant's "objection to even identifying documents based on the attorney-client or work product privilege is patently improper." *Id.*, at 185. Defendants here have "failed to comply with a well settled requirement of specifically identifying the evidence to which a privilege applies." *Id.* ("Given the fact that a waiver may be effected by implication, the court finds that [the defendant] has waived the attorney-client and work product privileges as to all documents sought in the request for documents … .").

6

**Deliberative Process Privilege**
Defendants objected on the grounds of deliberative process privilege to Document Request Nos. 2, 5, 6, 9, 11, 12, 22.

"The deliberative process privilege, which seems to be addressed most often in the context of a Freedom of Information Act case, exempts from disclosure certain interagency and intra-agency communications." *United States Commodity Futures Trading Commission v. U.S. Bank, N.A.,* 2014 U.S. Dist. LEXIS 153274 (N.D. Iowa Oct. 28, 2014). "The FOIA deliberative process privilege exempts from disclosure 'interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.' 5 U.S.C. § 552(b)(5). The deliberative process exemption permits nondisclosure if the document is both predecisional and deliberative. A predecisional document may be virtually any document that contains personal opinions and is designed to assist agency decision-makers in making their decisions. A document is deliberative if its disclosure would expose the decision-making process in such a way that candid discussion within the agency would be discouraged, undermining the agency's ability to perform its functions." *Missouri Coalition for Environment Foundation v. U.S. Army Corps of Engineers,* 542 F.3d 1204, 1211 (8th Cir. 1998) (internal citations omitted).

A privilege log must be provided to Plaintiff outlining any documents or items to which the Defendants are asserting the deliberative process privilege applies. *Murphy v. Piper,* 16-cv-2623 (DWF/BRT), 2018 U.S. Dist. LEXIS 93043 (D. Minn. Nov. 22, 2017); *Murphy v. Piper,* 16-cv-2623 (DWF/BRT), 2017 U.S. Dist. LEXIS 205750, at n.4 (D. Minn. Nov. 22, 2017) ("the Court agrees with the Magistrate Judge's conclusion that any claimed privilege with respect to particular discovery requests can be addressed through the parties' privilege logs and, if necessary, motion practice to resolve a dispute."); *Crancer v. Dept. of Justice,* 999 F.2d 1302, 1306 (8th Cir. 1993) (a *Vaughn* "index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided."). The Defendants have failed to comply with this basic requirement. Plaintiff requests that said privilege log be provided, otherwise Defendants will have waived any deliberative process privilege. *See, e.g., United States Commodity Futures Trading Commission v. U.S. Bank, N.A.,* 2014 U.S. Dist. LEXIS 77359 (N.D. Iowa June 4, 2014) ("the [responding party] first listed in boilerplate-fashion eight 'General Objections.' In responding to the individual requests for production, the [responding party] references its General Objections and, for good measure, repeats the objections again in boilerplate fashion."; "The [responding party] has yet to provide a privilege log, identifying the specific documents which are otherwise relevant and subject to discovery, but in which a privilege is claimed. ... Accordingly, the Court concludes the [responding party] must produce the documents identified in Request for Production No. 7.").

"There are limits to the deliberative process privilege. ... [T]he privilege is a qualified privilege, which may be overcome by a showing of sufficient need, considering the relevance of the evidence sought, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by the government. Courts must balance the evidentiary need against the harm resulting from disclosure." *Elkins v. District of Columbia,* 250 F.R.D. 20, 27 (D.D.C. 2008) (internal citations omitted).

7

**Private Data**
Defendants objected on the grounds of being private data on individuals other than Plaintiff or otherwise protected from disclosure by the [Minnesota Government] Data Practices Act to Document Request Nos. 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31; Dahl Interrogatory Nos. 1, 2a, 2b, 3, 5, 6, 8, 12, 13; Dreher Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 7, 9, 11, 13, 14; Giannini Interrogatory Nos. 1, 2a, 2b, 5, 7, 9, 10, 12, 13; Glavan Interrogatory Nos. 1, 2, 3a, 3b, 4a, 4b, 5, 6a, 6b, 8, 9, 11, 12; Gullickson Interrogatory Nos. 1, 2a, 2b, 4, 5, 7, 8, 12, 13; Halverson Interrogatory Nos. 1, 2a, 2b, 3, 4, 10, 11, 12, 13; Williams Interrogatory Nos. 1, 2a, 2b, 3, 4, 5, 6, 8, 9, 10, 13, 14, 15, 16.

The Minnesota Government Data Practices Act (the Data Practices Act), Minn. Stat. §§ 13.01-.90, "governs the storage of government data and public access to government data." *Webster v. Hennepin County,* 910 N.W.2d 420, 423 (Minn. 2018). "'Data on individuals' means all government data in which any individual is or can be identified as the subject of that data, unless the appearance of the name or other identifying data can be clearly demonstrated to be only incidental to the data and the data are not accessed by the name or other identifying data of any individual." Minn. Stat. § 13.02, subd. 5. "'Private data on individuals' are data made by statute or federal law applicable to the data: (a) not public; and (b) accessible to the individual subject of those data." Minn. Stat. § 13.02, subd. 12. Even private or nonpublic data, however, may be released pursuant to a court order. Minn. Stat. § 13.03, subd. 6.

"While the Court is mindful that Defendants might initially be hesitant to disclose any responsive information it believed would fall within the MGDPA, [ ] decisions from this Court have clearly explained that the MGDPA cannot be used as a basis to frustrate the discovery process in a lawsuit filed in federal court." *R.S. v. Minnewaska Area Sch. Dist. No. 2149,* 12-cv-588 (MJD/LIB), 2013 U.S. Dist. LEXIS 200265 (D. Minn. Mar. 20, 2013). "[I]t is improper for Defendants to withhold information from proper discovery in a federal lawsuit purely on grounds that it is protected under the MGDPA." *Scheffler v. Molin,* 11-cv-3279 (JNE/JJK), 2012 U.S. Dist. LEXIS 117492, 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012). The MGDPA does not "trump the Federal Rules of Civil Procedure, which define what information is discoverable in a federal lawsuit such as this." *Id.* "It is axiomatic that discovery in federal court is governed not by state rules or statutes, but by the Federal Rules of Civil Procedure." *Her v. Paulos,* 11-cv-808 (PAM/TNL), 2012 U.S. Dist. LEXIS 179928, 2012 WL 6634777, at *5 (D. Minn. Dec. 20, 2012). A party "may not refuse discovery requests where the information 'is reasonably calculated to lead to the discovery of admissible evidence,' Fed. R. Civ. P. 26(b)(1), on grounds that the MGDPA prevents its disclosure." *Id.* ("The MGDPA works to balance the interests of the party seeking the data, the entity maintaining the data, and any person who has provided or is the subject of the data. This task is usually accomplished in federal court by a protective order under Rule 26(c)."). Furthermore, "[e]ntire documents may not be withheld under the Minnesota Government Data Practices Act merely because they contain both public and nonpublic data." *Northwest Publications, Inc. v. Bloomington,* 499 N.W.2d 509, 509 (Minn. App. 1993).

**Legal Conclusions**
Defendants objected on the grounds of calling for a legal conclusion to Dahl Interrogatory Nos. 6, 7; Dahl Admission No. 17; Dreher Interrogatory Nos. 7, 8; Dreher Admission Nos. 12, 16; Giannini Interrogatory Nos. 5, 6; Glavan Interrogatory No. 7; Gullickson Interrogatory Nos. 5, 6; Gullickson Admission No. 11; Halverson Interrogatory Nos. 6, 7; Williams Interrogatory No. 11.

Rule 33(a)(2) states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2); *cf. Gilmore v. City of Minneapolis,* 13-cv-1019 (JRT/FLN), 2014 U.S. Dist. LEXIS 132543, 2014 WL 4722488 (D. Minn. Sept. 22, 2014) (impermissible interrogatories include those "asking for the disclosure of legal authorities relevant to Defendants' defenses that [their actions] were lawful"). The advisory committee notes to Rule 33 explain that "As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Advisory Committee Notes (1970 Amendment); see also Advisory Committee Notes to Rule Rule 26(b)(3) (1970 Amendment) ("Rules 33 and 36 have been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact."); 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 2167 (3d. ed) ("the only kind of interrogatory that is objectionable without more as requesting a legal conclusion is one that extends to 'legal issues unrelated to the facts of the case.'"). The topics at issue in Plaintiff's submitted Interrogatories relate to focal points of this case. Thus, Plaintiff's interrogatory does not ask the Defendants about a legal issue unrelated to the facts of the case.

**Security Data**
Defendants objected on the grounds of being nonpublic security data under Minn. Stat. § 13.37, subds. 1(a) and (2) to Document Request Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 28, 29, 30, 31.

Minn. Stat. § 13.37, subd. 1(a) defines "security information" as "government data the disclosure of which the responsible authority determines would be likely to substantially jeopardize the security of information, possessions, individuals or property against theft, tampering, improper use, attempted escape, illegal disclosure, trespass, or physical injury." A search on LexisNexis reveals that in *not one single case,* state or federal, was Minn. Stat. § 13.37 relied upon to withhold security policies or other information during discovery.

Defendants do not identify which information requested by Plaintiff constitute "nonpublic security data."

The documents and communications Plaintiff has requested relate to handcuffing procedures, use of hinged handcuffs, Unclothed Visual Body Search procedures, the wrist lock/arm bar tactic, etc. Some of the document requests objected to by the Defendants "on the grounds of being nonpublic security data" have absolutely nothing to do with security information. And for the requested documents and communications which do relate to security information, the disclosure of such documents and communications is not "likely" (*i.e.,* more probable than not) to jeopardize the safety and security of the facility. Defendants objections on this ground are unfounded.

**"Otherwise Protected"**
Defendants objected on the grounds of being "otherwise protected by applicable law from disclosure to Plaintiff" to Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31.

Defendants do not explain how any of Plaintiff's Document Requests are "otherwise protected."

9

**Plaintiff's Objections to Specific Responses being Deficient**
For the reasons stated above and for those stated below, Plaintiff presently finds the following Responses by the Defendants to be deficient:

Defendants' Responses to Plaintiff's Request for Production of Documents Nos. 2 (Plaintiff finds it highly unlikely that a search of all MSOP e-mails and other electronic databases for the term "hinged" would result in no responsive communications relating to handcuffs or restraints.); 3 (same); 4 (information from the manufacturers of the handcuffs which MSOP uses, MSOP training manuals and policies, intra-agency e-mails and other communications relating to "tight" handcuffs, etc.); 7 (same, but as it relates to length of time a person may be safely left handcuffed behind their back); 8 (no MSOP training manuals, policies, or memos have addressed the effects of using stress positions on a person?); 9 (same); 10 (Defendants claim that they are not aware of any "discoverable" documents relating to Request No. 10. Which documents or communications exist which are responsive to Request No. 10 which Defendants claim are "non-discoverable"?); 14 (same); 15 (same); 16 (same); 19 (same); 20 (same); 22 (Defendants state objections only and do not detail which, if any, documents or communications are responsive to this request); 27-29 (see next paragraph).

Requests for Production of Documents Nos. 27-29 each deal with job evaluations, complaints, reprimands, etc., relating to the named Defendants. This is not privileged information. *See, e.g.,* Minn. Stat. § 13.43, subd. 2(a), "the following personnel data on current and former employees … of a government entity is public: … (2) … job description; education and training background; and previous work experience; (3) date of first and last employment; (4) the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in a disciplinary action; (5) the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action, excluding data that would identify confidential sources who are employees of the public body; (6) the complete terms of any agreement settling any dispute arising out of an employment relationship … ." *See also, Alli v. Steward-Bowden,* 2013 U.S. Dist. LEXIS 9695 (S.D.N.Y. Jan. 15, 2013) (the New York federal court system has adopted "standing discovery requests" "directed to discovery in *pro se* prisoner actions" which provide that "when a complaint includes a use-of-force claim" defendants are required to provide the "identification and production of relevant documents concerning any defendant's employment-related disciplinary proceedings [and the] identification of materials relevant to any past use-of-force claims against a defendant."); *Hodge v. Perilli,* 2008 U.S. Dist. LEXIS 93981, 2008 WL 4865184 (S.D.N.Y. Nov. 1, 2008) ("[Defendant state corrections employees] are to produce all available grievances if they have not already done so and if some cannot be located, they are to supply a declaration by an individual with personal knowledge of the facts attesting to the DOCS practice on storing grievances and the search that was made for the missing grievances."; Defendants given two weeks to comply.).

**Plaintiff's Objections to All Interrogatories**
As stated to each Defendant by the Plaintiff at the beginning of each Interrogatory submitted, the interrogatories were to be answered by each named Defendant personally. Fed. R. Civ. P. 33(b)(1)(A) ("interrogatories must be answered [ ] by the party to whom they are directed").

"The interrogatories were directed to [the responding party], not counsel, and although counsel may assert objections, [the responding party] must answer the interrogatories, under oath, to the

10

extent that counsel has not objected." *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 149553 (E.D. Mo. Nov. 4, 2015). "The plain language of Rule 33(b) [ ] requires Defendant [ ] – not his attorney – to answer Plaintiff's Interrogatories. Although attorneys, as a practical matter, very likely assist their clients when answering Interrogatories, *see In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 08-90234, 2012 U.S. Dist. LEXIS 165332, 2012 WL 5839023 (E.D. Pa. Nov. 16, 2012), Rule 33(b)(3) required [Defendant] to answer each interrogatory separately, fully, and under oath." *United States v. Quebe,* 321 F.R.D. 303, 309 (S.D. Ohio May 16, 2017).

It is obvious that it was their attorney or some other person, and not the individual Defendants, that was responding to some (if not all) of the Interrogatories. Compare the almost identical responses to Dahl Interrogatory No. 2a & 2b ("Based on his training at MSOP, he knows that being in wrist restraints can be uncomfortable, and that it can be less comfortable the longer you are placed in handcuffs."); Dreher Interrogatory No. 2a & 2b ("Based on his training at MSOP, he knows that being in wrist restraints is inherently uncomfortable."); Giannini Interrogatory No. 2a & 2b ("Based on his training at MSOP, he knows that being in wrist restraints can be uncomfortable."); Gullickson Interrogatory No. 2a & 2b ("Based on his training, he knows that being in wrist restraints can be uncomfortable."); Halverson Interrogatory No. 2a & 2b ("Based on her training, she knows that being in wrist restraints can be uncomfortable."); Williams Interrogatory No. 2a & 2b ("Based on his training, he knows that being in wrist restraints can be uncomfortable over time."). Although the term "uncomfortable" does not appear in this, or any other, Interrogatory, it is copied diligently in each response.

Such responses by an attorney or some other person are not in compliance with the Rules of Federal Civil Procedure. Plaintiff demands that all Interrogatories be answered *personally* by each of the Defendants to whom Plaintiff submitted such and provided to Plaintiff within two weeks after receipt of this request.

Beyond this general deficiency, Plaintiff further finds the following responses to interrogatories deficient:

Dahl Interrogatory Nos. 1 (not responsive to the "when" of the training and practice had); 2a & 2b (not responsive to the specific questions posed); 6 (non-responsive); 7 (non-responsive); 11 (non-responsive); 12 (non-responsive); 13 (non-responsive); Dreher Interrogatory Nos. 1 (not responsive to the "when" of the training and practice had); 2a & 2b (not responsive to the specific questions posed); 7 (non-responsive); 8 (non-responsive); 12 (non-responsive); 13 (non-responsive); 14 (non-responsive); Giannini Interrogatory Nos. 1 (not fully responsive to the "when" and "where" of the training and practice had); 2a & 2b (not responsive to the specific questions posed); 5 (non-responsive); 6 (non-responsive); 11 (non-responsive); 12 (non-responsive); 13 (non-responsive); Glavan Interrogatory Nos. 1 (not responsive to the "when" of the training and practice had); 2 (non-responsive); 4a & 4b (non-responsive); 6a & 6b (not responsive to the specific questions posed); 7 (non-responsive); 8 (not responsive to the specific question; interrogatory not limited to "discipline," interrogatory not limited to conduct while employed at MSOP); 9 (not responsive as to the circumstances under which his employment at MSOP ended); 10 (non-responsive); 11 (non-responsive); 12 (non-responsive); Gullickson Interrogatory Nos. 1 (not responsive to the "when" of the training and practice had, not responsive to the "where" of his "prior employment"); 2a & 2b (not responsive to the specific questions posed); 5 (non-responsive); 6 (non-responsive); 11 (non-responsive); 12

11

(non-responsive); 13 (non-responsive); Halverson Interrogatory Nos. 1 (not responsive to the "when" of the training and practice had); 2a & 2b (not responsive to the specific questions posed); 3 (not responsive to the question of which "finger(s) used to check for tightness"); 6 (non-responsive); 7 (non-responsive); 9 (non-responsive); 10 (non-responsive); 11 (non-responsive); 12 (not responsive to the specific question; interrogatory not limited to "discipline," interrogatory not limited to conduct while employed at MSOP); 13 (not responsive as to the circumstances under which her employment at MSOP ended, *e.g.*, quit, was bought out, fired for misconduct, "developed a conscience," etc.); Williams Interrogatory Nos. 1 (not fully responsive to the "when" and "where" of the training and practice had); 2a & 2b (not responsive to the specific questions posed); 3 (not responsive to the specific training in the positional handcuffing described therein; if no such specific training was provided then state "none" – but such response would then contradict the response already provided by Williams to Interrogatory No. 4); 5a & 5b (not responsive to the specific questions posed); 6 (not responsive to the specific question posed; if no such specific policy or directive existed at that time then state so, or if such did exist, then identify such); 11 (non-responsive); 12 (non-responsive); 13 (non-responsive); 14 (non-responsive); 15 (not responsive to the specific question; interrogatory not limited to "discipline," interrogatory not limited to conduct while employed at MSOP); 16 (not responsive as to the circumstances under which his employment at MSOP ended).

Plaintiff finds the following responses to requests for admission to be deficient:

Dahl Admission Nos. 1 (not fully responsive. Dahl must first confirm with MSOP or related sources whether or not the attached incident report matches the incident report authored by him on that date. Fed. R. Civ. P. 36(a)(4): "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only if* the party states that it has made *reasonable inquiry* and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."); 3 (non-responsive; terms objected to are commonly used in the English language); 6 (non-responsive); 7 (non-responsive); 12 (not fully responsive; certainly Dahl can admit that he did not "remove" the handcuffs at the time he spoke to me in the HSA around 6:55 p.m., being that it is well documented and he admits that he and Defendant Dreher removed the cuffs before doing the unclothed visual body cavity search on my person at around 8 p.m.; his mere assertion that he "lacks sufficient knowledge to truthfully admit or deny" the other allegations does not comply with Fed. R. Civ. P. 36(a)(4), *see below*); 14 (non-responsive); 15 (non-responsive); 16 (non-responsive); 17 (non-responsive); Dreher Admission Nos. 1 (not fully responsive); 3 (non-responsive); 5 (To be clear: Request for Admission No. 5 deals with the timeframe from when I was locked inside camera room PI-N102 until about two hours later when I was moved to PI-N104 and the handcuffs removed. I believe that Dreher may have misread the request and is referring to his contention that he checked the proper application of the handcuffs upon my arrival and initial search in the HSA *prior* to being locked into camera room PI-N102. If so, then his response to Admission No. 5 is erroneous and should be corrected.); 6 (non-responsive); 7 (non-responsive); 11 (seek clarification: Dreher's response ends with "... but Defendant Dreher does know the exact clothing Plaintiff was wearing." Should this read "does not know"?); 13 (non-responsive); 14 (non-responsive); 15 (non-responsive); 16 (non-responsive); Giannini Admission Nos. 1 (not fully responsive); 3 (not fully responsive); 5 (non-responsive); 7 (non-responsive; Rule 36(a)(4) "does not authorize a respondent to evade the request for admission with an answer to some imaginary, collateral question." *Deya v. Hiawatha Hosp. Ass'n,* 2011 U.S. Dist. LEXIS 44337, 2011 WL 1559422 (D. Kan. Apr. 25, 2011)); 8 (non-responsive); Glavan Admission Nos. 1 (not fully responsive);

3 (non-responsive); 5 (non-responsive, the term "resist" is commonly used in the English language); 10 (non-responsive); Gullickson Admission Nos. 1 (not fully responsive); 3 (non-responsive); 5 (non-responsive; *see* Rule 36(a)(4) and *Deya, supra*); 6 (non-responsive); 10 (non-responsive); 11 (non-responsive); Halverson Admission Nos. 1 (not fully responsive); 3 (not fully responsive); 5 (not fully responsive); 7 (non-responsive); 9 (see the requested clarification to Dreher Admission No. 5 above; if Halverson's response is erroneous then it should be corrected); Williams Admission Nos. 1 (not fully responsive); 4 (non-responsive); 8 (non-responsive).

Fed. R. Civ. P. 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The interrogatories, requests for admission, and document requests I submitted to the Defendants comport with the discovery scope and limits of Fed. R. Civ. P. 26(b)(1). These requests seek potentially relevant information and documents and will not overburden the Defendants to fully respond to.

Please have Defendants provide their own personal responses to the Interrogatories addressed to each of them.

Please re-submit responses to the Interrogatories without the "boilerplate" objections for each. While you may certainly incorporate by reference all of the General Objections identified at the beginning of each set of Interrogatories in each response, any specific objections to a particular interrogatory should be explained with specificity.

If the Defendants refuse to provide more complete written responses, more complete documentation in response to my requests for documentation, or more detailed reasons for each specific objection, then I will move the Court for an Order to compel discovery.

Please contact me with any questions or concerns you have.

                                    Sincerely,

                                    **s/ Christopher Ivey**

                                    Christopher Ivey

encs. (3)