UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher Ivey,

Civil File No. 12-cv-30 (DWF/TNL)

Plaintiff,

vs.

MSOP; Daniel Williams;
Michael Glavan; Steven Sayovitz;
William Gullickson; Scott Giannini;
Tara Halverson; Kevin Dreher; and
Matthew Dahl,

Defendants.

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND MOTION TO DENY CONFIDENTIAL DESIGNATIONS**

## INTRODUCTION

Plaintiff Christopher Ivey's motion to compel (ECF No. 94) and motion to deny confidentiality designations (ECF No. 97) should be denied. After Plaintiff served hundreds of discovery requests, Defendants provided timely answers to interrogatories, answers to requests for admission, written responses to requests for documents, and over 500 pages of documents, including documents related to the incidents Plaintiff raised in his complaint, MSOP policies, communications regarding policy changes, training materials, photographs, and incident reports. Defendants also indicated that Plaintiff would have the ability to view video of the incidents upon the issuance of a protective order. Plaintiff, however, continues to seek documents and information, and indeed indicates he plans to serve additional discovery requests following the resolution of this motion. Plaintiff's motions should be denied, as his requests are unduly burdensome, not

proportional to the needs of this case, and will implicate serious security and safety issues at MSOP.

## FACTUAL BACKGROUND

### I.   FACTS UNDERLYING COMPLAINT.

Plaintiff is civilly committed to the Minnesota Sex Offender Program.  This case arises out of an incident where Plaintiff states he "chose to deliberately do damage to the room he was assigned to at the MSOP."  Compl. ¶ 12, ECF No. 1.  Plaintiff barricaded the door of his room, removed the bolts that secured a metal stool to the floor of his room, and used the stool to smash the room's "window, stainless steel toilet, and other fixtures."  *Id.* ¶¶ 13, 19.  Plaintiff alleges these actions led to his restraint in handcuffs, his placement in the High Security Area, and an unclothed visual body search.

Many of Plaintiff's claims were dismissed following initial motion practice, including all claims challenging MSOP's policies and procedures.  *See* ECF No. 70. Plaintiff's only remaining claims are individual-capacity claims against various current and former MSOP employees.  Specifically, Counts 1–3 relate to claims that handcuffs were applied improperly, Counts 7–8 relate to claims about the manner in which Plaintiff was allegedly subdued, Count 12 relates to Plaintiff's claim that certain Defendants did not loosen handcuffs following complaints of pain, and Counts 16–17 relate to Plaintiff's belief that an unclothed visual body search was unreasonable.  ECF No. 1, ¶¶ 68–70, 74-75, 79, 83–84.  There are no official-capacity claims remaining.

II.   **PLAINTIFF'S DISCOVERY REQUESTS AND DEFENDANTS' DISCOVERY RESPONSES.**

Prior to the Court ruling on Defendants' second motion to dismiss, Plaintiff served 208 far-reaching discovery requests, including 93 separate interrogatories, 84 separate requests for admission, and 31 requests for production of documents. *See* Ltr. from Plaintiff to Defs., dated Jan. 22, 2019 (attached as Boese Decl. Ex. 1); *see also* Boese Decl. Exs. 3–17 (Defendants' initial discovery response, which include a recitation of Plaintiff's requests). Plaintiff's requests for production of documents were extremely broad.[1] Plaintiff indicated in his transmittal letter to Defendants that their responses were due 30 days after the district court ruled on the pending motion to dismiss. Boese Decl. Ex. 1, p. 2. The district court issued its order on Defendants' motion to dismiss on February 19, 2019. ECF No. 86. Defendants' responses to Plaintiff's discovery requests were therefore due on or before March 21, 2019.

On March 21, Defendants served timely answers to Plaintiff's interrogatories, responses to Plaintiff's requests for admission, and written responses to Plaintiff's request for production of documents. Boese Decl. Exs. 3–17.

---

[1] For example, Request No. 3 sought "[a]ny and all documents or communications relating to any concerns or potential problems with the use of hinged handcuffs," Request No. 4 sought "[a]any and all documents or communications relating to any concerns or potential problems with handcuffs which are applied too tightly or which become too tight after being applied on a person," and Request No. 18 sought "[a]ny and all documents or communications to or from the Department of Human Services . . . sent or received between February 6, 2012 and March 9, 2012 in regards to handcuffing procedures, use of a 'chicken wing' restraint technique (*see* ¶ 10), handcuffing injuries, and/or placement of clients in the High Security Area in restraints for up to four hours, whether pertaining directly to Christopher Ivey or not." Boese Decl. Ex. 2, pp. 3, 8. This is just a sample of the overbreadth of Plaintiff's requests, and is not an exhaustive list.

On March 29, 2019, the parties engaged in a telephone discussion regarding, among other things, a protective order for the case and the timing of Defendants' document production.  Ltr. from Defs. to Pl., dated Apr. 1, 2019 (attached as Boese Decl. Ex. 18).  With respect to the protective order, Defendants told Plaintiff they were drafting a proposed protective order and would send it to Plaintiff for review, in an effort to submit a stipulated protective order to the Court.  *Id.* at 1.  With respect to Defendants' document production, Defendants told Plaintiff they hoped to produce documents within three weeks of the call.  *Id.*  Plaintiff agreed with this approach to both the protective order and Defendants' production of documents.  *Id.*  The parties did not discuss any issues with Defendants' written discovery responses.  *See generally id.*

On April 17, less than three weeks after the parties' March 29 phone call, Defendants produced 511 pages of documents.  *See* Ltr. from Defs. to Pl., dated Apr. 17, 2019 (attached as Boese Decl. Ex. 19).  Defendants also provided Plaintiff with a draft stipulation for a protective order, that included language permitting Plaintiff to view video of the incidents in question.  Boese Decl. Ex. 20.  Defendants indicated to Plaintiff that he should sign and return if it was acceptable to him.  Boese Decl. Ex. 19.  Defendants also served their First Supplemental Responses to Plaintiff's Requests for Production of Documents.  Boese Decl. Ex. 21.

Given the breadth of Plaintiff's discovery requests, a few potentially responsive documents were discovered that constituted nonpublic security data, and such documents

4

were not produced in Defendants' document production.[2]   The documents that were not produced are used in the training of MSOP staff on handcuffing clients and conducting room extractions, and outline in a play-by-play fashion MSOP's strategies and tactics in addressing clients who are out of behavioral control.  Declaration of Steven Sayovitz, ¶ 5. MSOP deems them nonpublic security data because the release of this information to MSOP clients would seriously compromise the safety and security of MSOP staff and the clients MSOP serves.  *Id.* ¶ 7.  If MSOP clients know the strategies employed by staff to control behavior in the facility, clients will be able to employ countermeasures to beat MSOP's procedures.  *Id.*  This will compromise the security of the facility, the safety of staff, and the safety of clients during serious events requiring staff intervention and create a risk of serious physical harm.  *Id.*

## III.   THE CURRENT DISCOVERY DISPUTE.

On April 18, Defendants received a thirteen-page deficiency letter from Plaintiff dated April 15, taking issue with nearly each and every response by Defendants to Plaintiff's discovery requests.  ECF No. 94.  Defendants responded on April 30 to the plethora of concerns identified by Plaintiff.  Ltr. from Defs. to Pl., dated Apr. 30, 2019 (attached as Boese Decl. Ex. 22).  While Defendants outlined their position regarding certain objections they asserted, Defendants agreed to provide Plaintiff with specific items, including a privilege log and supplemental answers to two of Plaintiff's interrogatories.  *Id.* at 3–8.  Defendants stated they were hopeful their letter could satisfy

---

[2] Two other documents were produced with nonpublic security data redacted.

Plaintiff's concerns, or at least narrow the issues identified by Plaintiff in order to have a meaningful meet and confer:

> Defendants are hopeful that the foregoing provides Plaintiff with sufficient information responsive to his letter, and that Plaintiff will reevaluate his concerns with Defendants' responses to Plaintiff's hundreds of requests. If Plaintiff continues to have concerns, Defendants expect that Plaintiff will provide them with specific and targeted issues such that they can attempt to address them or have a meaningful meet and confer to work out any remaining concerns.

*Id.* at 8. Rather than respond to Defendants letter, or call Defendants to attempt to work out the parties' differences, Plaintiff instead filed the present two motions. The parties never met and conferred regarding the issues raised in Plaintiff's motion prior to its filing. Indeed, Defendants were not provided any notice that Plaintiff had any issues with the proposed protective order sent for Plaintiff's review until Defendants received the present motion. Plaintiff admits he did not meet and confer before filing the motion. *See* ECF No. 93 (stating he must move now "due to time constraints"); ECF No. 95 (stating he did not respond to the draft protective order before filing this motion); *see also* ECF No. 98.

Days after receiving Plaintiff's motion to compel, Defendants received another letter from Plaintiff on May 9 (dated May 7). Ltr. from Pl. to Defs., dated May 7 (attached as Boese Decl. Ex. 23). In it, Plaintiff acknowledged the breadth of Defendants' document production, admitting that the production was "wide-ranging" and that the concerns he expressed in his April 15, 2019 letter were "largely based" only on Defendants' written discovery requests. *Id.* at 1. He stated, "While I still seek certain other information, I am appreciative of the 511 pages of documents which were provided

to me." *Id.* Plaintiff's letter outlined only five specific items that were "still at a disagreement," including (1) a privilege log;[3] (2) a description of which MSOP training courses taken by Defendants involved handcuffing procedures;[4] (3) a description of what additional training, prior to MSOP, any Defendant received in the use of handcuffs; (4) personal responses from each Defendant to the interrogatories posed to them; and (5) a copy of an unpublished case cited in Defendants' April 30, 2019 letter. *Id.* at 5–6.

Defendants contacted Plaintiff on May 10, to discuss Plaintiff's concerns. Defendants informed Plaintiff that they already agreed to produce a privilege log; that they would attempt to determine which MSOP training courses taken by Defendants involved handcuffing procedures and identify any previous training courses taken outside MSOP; that Plaintiff already received personal interrogatory responses from each Defendant; and that Defendants would send Plaintiff a copy of the unpublished case cited in Defendants' April 30 letter. Ltr. from Defs. to Pl., dated May 14, 2019 (attached as Boese Decl. Ex. 24).

During the parties' May 10 phone call, Plaintiff also indicated that his only remaining concerns in his motion to compel revolved around Plaintiff's erroneous belief that Defendants were refusing to permit him to view video of the incident before trial, and his erroneous belief that he is entitled to possess documents that are nonpublic security data protected by the Minnesota Government Data Practices Act. *Id.* at 2.

---

[3] Defendants had already agreed to provide this.
[4] Defendants had already produced to Plaintiff a list of every training course each individual Defendant took during his employment with MSOP.

Defendants informed Plaintiff that his interpretation of the protective order regarding his access to the video was incorrect, and that he would be able to view it any time after the Court issued an appropriate protective order.[5]  *Id.* at 1.  Defendants also informed Plaintiff that they stood by their objections to providing nonpublic security data. Defendants enclosed with their letter their privilege log and the unpublished case Plaintiff requested.  *See generally id.*  Defendants also indicated they would supplement their interrogatories as outlined in their April 30 letter, the parties' May 10 phone call, and Defendants' May 14 letter.  *Id.* at 2–3.

## IV.   REMAINING ISSUES.

In Plaintiff's motion to compel, he raises his general belief that Defendants' discovery response are inadequate.  ECF No. 92, p. 14 (§ E).  But it is clear from the parties' discussions following Plaintiff filing his motions that the only items remaining in dispute are:  (1) whether Defendants should be required to produce sensitive, nonpublic security data; (2) whether Defendants are impeding Plaintiff's ability to view the security video of the incidents in question; and (3) whether the security video may be designated as confidential.  Boese Decl. Ex. 24.  In a letter Defendants received the day this memorandum was due for filing, Plaintiff confirmed that the only issue he seeks to raise in his motion relates to his access to nonpublic security data.  Ltr. from Pl. to Defs., dated May 13, 2019 (attached as Boese Decl. Ex. 25).

---

[5] As stated, Defendants did not have any notice that Plaintiff had any concerns regarding the proposed protective order until they received Plaintiff's motion.

Plaintiff's motions should be denied, as Plaintiff is not being denied access to his ability to view video related to the incident, and Plaintiff does not require access to Defendants' sensitive security data to prosecute his case.

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Further, "[a] party need not provide discovery of electronically stored information from sources that the parties identifies as not reasonably accessible because of undue burden or cost." *Id.* R. 26(b)(2)(B). The Court "must limit the frequency or extent of discovery otherwise allowed by these rules" if it determines that (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Id.* R. 26(b)(2)(C). A court may also protect a party from disclosing information that would cause annoyance, embarrassment, oppression, or undue burden or expense. *Id.* R. 26(c)(1).

## ARGUMENT

In light of Plaintiff's April 7 letter to Defendants, and the parties' subsequent phone discussion, Defendants' opposition memorandum is confined to the following issues:  (1) Plaintiff failed to comply with the local rules; (2) Plaintiff is not entitled to possess nonpublic security data because it could compromise the safety and security of MSOP; and (3) Plaintiff's concerns regarding access to the video of the incidents are unfounded.

## I. PLAINTIFF FAILED TO PROPERLY MEET AND CONFER.

First, Plaintiff's motions should be denied because he failed to meet and confer with Defendants regarding the subject of his motions.

Local Rule 7.1(a) states that "[b]efore filing a motion . . . the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion."  *See also* L.R. 37.1(a) (stating that before filing a motion to compel, the party must file a certification "that the movant has in good faith conferred or attempted to confer with the party failing to act").  Courts in this district have interpreted the meet-and-confer requirement to entail more than simply exchanging letters.  *See, e.g.*, *Cattanach v. Burlington N. Santa Fe, LLC*, No. 13-1664, 2014 WL 11429037, at *9 (D. Minn. Sept. 16, 2014) (stating that Local Rule 7.1 requires a "robust meet-and-confer" and that "letters or emails cannot substitute for a personal conversation"); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 14-245, 2016 WL 6917288, at *2 n.1 (D. Minn. July 13, 2016) (stating that "Local Rule 7.1 does not require a face-to-face meeting, but contemplates a more robust process than an exchange of emails").

Here, Defendants provided Plaintiff with a thorough response to the issues raised in Plaintiff's April 15 letter.  Rather than respond to this letter, or even attempt to call Defendants to discuss the issues, Plaintiff simply filed the two motions at issue.  In fact, with respect to Plaintiff's issues with the proposed protective order drafted by Defendants, Plaintiff failed to provide Defendants with any notice that he believed the proposed protective order would not provide him with access to the video until trial.  Had Plaintiff reached out before filing the motion, he would have discovered that the proposed protective order in no way limits his ability to see the video or introduce it into evidence if he desires.

Moreover, it appears that Plaintiff filed his motion to compel before even really considering what issues, in his mind, were still outstanding.  Plaintiff's motion to compel was filed after he was in receipt of all Defendants' discovery responses and document production.  *See, e.g.*, ECF No. 93, p. 2 (stating Plaintiff received Defendants' document production on April 22).  And although his motion to compel seemed to raise every issue he outlined in his April 15 letter, *see id.* at 14 (directing the Court to the issues raised in Plaintiff's April 15 letter), Plaintiff's subsequent May 7 and May 13 letters drastically limit the innumerable issues identified in his motion and his initial letter.  Boese Decl. Ex. 23, pp. 5–6, Ex. 25, p. 2.

This case exemplifies why meet-and-confers are necessary before filing motions to compel.  Had Plaintiff simply engaged in a meaningful meet-and-confer before filing his motion, much of the present motion could have been avoided as Defendants have agreed

to address many of Plaintiff's issues.  Instead, Plaintiff's failure to comply with the local

rules resulted in unnecessary briefing and work by the parties and the court.

## II.  PLAINTIFF IS NOT ENTITLED TO POSSESS NONPUBLIC SECURITY DATA OR NONPUBLIC DATA ON INDIVIDUALS OTHER THAN PLAINTIFF, AND DEFENDANTS CANNOT DISCLOSE DOCUMENTS PROTECTED BY THE MINNESOTA GOVERNMENT DATA PRACTICES ACT WITHOUT A COURT ORDER.

Due to the breadth of Plaintiff's discovery requests, certain requests hit on

nonpublic documents that are protected by the Minnesota Government Data Practices Act

("MGDPA").  The Court should deny Plaintiff's request to possess these irrelevant, and

otherwise protected documents from discovery.  Specific to the security data, production

of such information will compromise the security and safety of the MSOP facility, its

staff, and its clients.

### A.  DHS Cannot Disclose Documents Protected By The MGDPA Without A Court Order.

The Minnesota Government Data Practices Act ("MGDPA") "regulates the

collection, creation, storage, maintenance, dissemination, and access to government data

in government entities."  Minn. Stat. § 13.01, subd. 3.  As a "government entity," DHS is

governed by the MGDPA.  *Id.* § 13.02, subd. 7a (defining "government entity" as "a state

agency, statewide system, or political subdivision").

The MGDPA requires a court order before MSOP can release any data that is not

public data.  Minn. Stat. § 13.03, subd. 6.  In making the determination of whether such

nonpublic data should be disclosed, the court employs a two-step process.  First, the court

determines whether the data is discoverable pursuant to the rules of civil procedure and

evidence. *Id.* If so, then the court determines "whether the benefit to the party seeking access to the data outweighs any harm to the confidentiality interests of the entity maintaining the data." *Id.* Courts employ this two-part test in determining whether certain documents protected by the MGDPA should be disclosed. *See, e.g.*, *Nyrop v. Indep. Sch. Dist. No. 11*, No. 07-cv-4663 (DSD/JJG), 2008 WL 11347410 (D. Minn. Aug. 21, 2008); *Coffey v. City of Oakdale*, No. 10-4060, 2011 WL 13234284 (D. Minn. Apr. 22, 2011).

**B.   MSOP Security Data Should Not Be Disclosed To Plaintiff, Who Is A Client Of MSOP.**

Without citing any evidence, basis, or authority, Plaintiff claims that Defendants should be required to produce documents that are classified as nonpublic security information. But this very limited amount and type of information that was not produced in response to Plaintiff's requests is crucial to the institutional security of MSOP, and to ensure the safety of both staff and clients. Plaintiff's motion to compel security data should therefore be denied.

The MGDPA defines "security information" as "government data the disclosure of which the responsible authority determines would be likely to substantially jeopardize the security of information, possessions, individuals or property against theft, tampering, improper use, attempting escape, illegal disclosure, trespass, or physical injury." Minn. Stat. § 13.37, subd. 1(a). Security information is classified as nonpublic data. *Id.*, subd. 2.

As to the first part of the test this Court considers in determining whether nonpublic data should be disclosed, how MSOP trains its employees is not relevant to the claims remaining in this case.  As stated, this is not a case about MSOP policies or procedures.  MSOP is not a party, and there are no official-capacity claims remaining. Indeed, all of Plaintiff's claims alleging unconstitutional policies and his relief seeking changes to the way MSOP trains its staff have been dismissed.  ECF Nos. 70 and 86.  As this court observed, the standard to apply to a claim for excessive force is that the force used against Plaintiff was "objectively unreasonable."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).  Courts consider a number of factors in making this determination, including the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the defendant to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the defendant, and whether the plaintiff was actively resisting. *Id.*

While the manner by which the Defendants were trained may inform how they acted the night of the incident, as the Defendants rely on their training in how they carry out their job responsibilities, the question to be decided in this case is whether the force used against Plaintiff on the particular night in question was reasonable, not whether the training provided was constitutional.  Indeed, this is not a failure to train case, or an official-capacity case about the constitutionality of policies.  Rather, it is simply a case about the specific actions of specific MSOP employees on a particular evening.  Plaintiff has failed to cite any specific need for this information.

But even if the Court determined that the requested documents were discoverable, the Court must still determine whether the benefit to the plaintiff outweighs the risk of harm to MSOP.  Here, the benefit to the Plaintiff is minimal.  If Plaintiff desires to explore general information about how Defendants were trained in applying handcuffs or conducting unclothed visual body searches, Plaintiff is free to do so through other means in discovery.  But to disclose directly to an MSOP client the precise step-by-step manner in which MSOP staff are trained to respond to dangerous situations that arise at MSOP— especially to one who admits he engaged in dangerous behavior the night of the incident by removing a metal stool and destroying property and trying to break a window—would be much more harmful to the institution than any benefit to the Plaintiff.  *See* Sayovitz Decl. ¶ 5, 7.  Indeed, as Mr. Sayovitz notes in his sworn declaration, clients already take countermeasures to tactics they know will be used against them.[6]  *Id.* ¶ 8.  Permitting a client to have the security data would seriously jeopardize MSOP's ability to maintain control over the facility.

Defendants acknowledge that some courts in this District have held that the MGDPA should not invalidate the Federal Rules of Civil Procedure.  *See, e.g.*, *R.S. v. Minnewaska Area Sch. Dist. No. 2149*, No. 12-588 (MJD/LIB), 2013 WL 12149246,

---

[6] For example, Mr. Sayovitz stated that because clients know that chemical irritant may be used during a room extraction, clients will cover their face with clothing or set up a fan to blow the irritant out of the room in order to avoid its impact on them.  Sayovitz Decl. ¶ 8.  Indeed, Plaintiff stated in his Complaint that he "held a wet towel over his face to aid his breathing" when chemical irritant was deployed in his room the night of the incident that forms the basis of this lawsuit.  ECF No. 1, ¶ 17.  Mr. Sayovitz also discussed a recent incident where a client put dish soap on the ground to hinder staff from entering his room during a room extraction.  Sayovitz Decl. ¶ 8.

at *6–7 (D. Minn. Mar. 20, 2013).   But in *R.S.*, a protective order had been issued that protected the disclosure of private information of other students, the documents were relevant to the issues in the case, and the defendants had not articulated any specific argument for why the requested information was sensitive.   *See id.* at *6 n.7, *9–11.   And in *Scheffler v. Molin*, the defendants did not provide any reason why the requested information was sensitive, and one of the specific documents identified in the motion to compel directly concerned the defendant.    11-3279 (JNE/JJK), 2012 WL 3292894, at *6-8.

Unlike the cases cited by Plaintiff regarding courts requiring disclosure of data protected by the MGDPA, the data withheld or redacted in this case would compromise the security and safety of a secure treatment facility.   Sayovitz Decl. ¶¶ 5, 7.   None of the cases cited by Plaintiff implicate the same types of safety and security concerns that are implicated in this case, especially given that Plaintiff is representing himself and is a client committed to the facility that is expressing the security concerns.[7]   Thus, even if the Court concluded that the MGDPA generally does not invalidate the Federal Rules of Civil Procedure, the present case has unique circumstances that necessitate the protection of the requested documents.   *See* Fed. R. Civ. P. 26(c) (stating court may enter a protective order).

---

[7] Indeed, this is not a case where one could potentially consider an "Attorney's Eyes Only" designation for documents.

**C.     Data Classified As Private Data On Individuals Other Than Plaintiff
Should Not Be Disclosed.**

Certain of Plaintiff's discovery requests encompassed private data on individuals

separate and distinct from Plaintiff.  For example, Document Request No. 4 seeks:

> Any and all documents or communications relating to any concerns or
> potential problems with handcuffs which are applied too tightly or which
> become too tight after being applied on a person.

Boese Decl. Ex. 2, p. 3.  Defendants objected on the grounds that such request was,

among other things, vague, overbroad, unduly burdensome, not relevant or proportional

to the needs of the case, and seeks documents that constitute private data on individuals

other than Plaintiff.  Boese Decl. Ex. 17, pp. 5–6.  While the overbreadth of this request

is readily apparent on its face, it is also tangibly apparent by the documents returned by

MSOP's searches.   Indeed, included in documents responsive to this request were

incident reports relating to times security counselors at MSOP recorded an MSOP client

complaining that their handcuffs were placed too tightly.  Not only are the experiences of

other clients in situations unrelated to the incident at issue in this case irrelevant and not

likely to lead to the discovery of admissible evidence, they contain private data on

individuals other than Plaintiff.  *See* Minn. Stat. § 13.46, subd. 2(a) (stating that "[d]ata

on individuals collected, maintained, used, or disseminated by the welfare system are

private data on individuals"); *see also id.*, subd. 1(c) (stating that the welfare system

includes the Department of Human Services).  Plaintiff has not identified why he needs

this information to prosecute his claims.  The motion to compel should be denied.

## V.   DEFENDANTS ARE NOT IMPEDING PLAINTIFF'S ABILITY TO SEE THE VIDEO OF THE INCIDENT.

It appears to Defendants that Plaintiff no longer has concerns related to the video of the incident, so long as he has access to view it before trial.  As such, this portion of his motion appears moot.

In his motion, Plaintiff complains that Defendants will not provide him with access to the video before trial.  This is not true.  Had Plaintiff met and conferred with Defendants prior to filing his motion, he would know that, and indeed Defendants told Plaintiff this in both its May 10 phone call and its May 14 letter.  Boese Decl. Ex. 24, p. 1; *see also* Boese Decl. Ex. 20, ¶ 8 (proposing a protective order where Plaintiff would have access to the video during discovery).

The security video of the incident involving Plaintiff is nonpublic security data, and is protected from disclosure under the MGDPA.  Minn. Stat. § 13.37, subd. 1(a); *see also* Declaration of David Bornus, Ex. 1.  Although Defendants have security concerns with Plaintiff keeping a copy of the security video on his client network space, Defendants have no issue providing Plaintiff with reasonable access to view the video. Defendants believe this provides a reasonable compromise, which balances Plaintiff's need to view the video with Defendant's need to maintain institutional security.[8]

---

[8] The proposed protective order sent to Plaintiff by Defendants stated that *copies* of the MSOP security video of the incident would not be provided to Plaintiff.  Boese Decl. Ex. 20, ¶ 8.  But that "if any such video is discoverable or filed with the Court by Defendants, Defendants shall give Plaintiff reasonable access to view the MSOP security video upon a request by Plaintiff."  *Id.*  Indeed, Defendants stated in their written responses to Plaintiff's Request for Production No. 30 (which sought copies of the
(Footnote Continued on Next Page)

It is common for courts to permit individuals who are residing in a secure facility to view video evidence but not possess it.  Plaintiff himself cites a number of cases in his Motion to Deny Confidentiality Designations that only permitted an individual to see the video, but not possess it.   *See, e.g.*, *Donohue v. Lambert*, No. 7:13cv000397, 2015 WL 9581868, at *2 (W.D. Va. Dec. 30, 2015) (stating that defendants permitted Plaintiff to view all available video footage related to his claims complied with Defendants' discovery obligations);   *Welch v.   Stratton*,   No. 2:17-cv-0517, 2018 WL 3219385, at *7 (E.D. Cal. June 29, 2018) (stating that a plaintiff had no need to keep a DVD of the incidents on his person, but ordered the defendant to "coordinate with the litigation coordinator at [the facility] to arrange a time for plaintiff to review the two DVDs and make notes during such review").  Defendants have no objection to permitting Plaintiff to review the videos of the incidents it has in its possession.

To the extent Plaintiff is asking this Court to deny a confidential designation of a video pursuant to a yet-to-be-issued, nonexistent protective order, this issue is not ripe for consideration.  No protective order has been issued by the Court, and Defendants have yet to designate any portion of the video confidential.[9]  Because this Court does not issue advisory opinions on issues that have not yet come to pass (or may never will), Plaintiff's motion   should   be   denied.    *See   Midkiff v.   Holder*,   No. 10-4620   (PJS/AJB),

_____

(Footnote Continued from Previous Page)
videos) that Defendants would "make any such recording available for Plaintiff to view if and when the Court issues a suitable protective order."  Boese Decl. Ex. 17, p. 25.
[9] Defendants, however, acknowledge that they will designate the video footage as confidential under any protective order issued by this Court.

2010 WL 5172882, at *2 (stating that the "case or controversy requirement is not satisfied when the plaintiff is seeking only an advisory opinion on abstract legal issues").[10]

Further, Plaintiff provides no explanation why he needs to share the video with third parties. Plaintiff states he needs access to the video to see relevant evidence, identify potentially relevant witnesses, identify new claims, and identify if any video footage has been erased. ECF No. 97, p. 3. Whether a video is designated confidential will not impede his ability to do these things. Furthermore, a confidential designation would be appropriate in this case because DHS has determined that video recorded to monitor and record activity within MSOP is nonpublic security information under Minn. Stat. § 13.37. Declaration of David Bornus, Ex. 1, p. 1.

Finally, to the extent Plaintiff argues that Defendants should not be permitted to file the video under seal, this is also not ripe for consideration. To date, no party has taken any affirmative steps to file the video with the Court. Moreover, any disagreement between the parties on whether evidence should be filed under seal can be addressed if such issue comes to pass, as the District has procedures that parties are to follow when exhibits are filed under seal. *See* L.R. 5.6 (discussing joint motions for continued

---

[10] Defendants are still attempting to work with Plaintiff on a stipulated protective order. *See* Boese Decl. Ex. 24. If the parties are unable to agree on a stipulated protective order, Defendants will move for one.

sealing).  Any disagreement over whether video of the incident should be publicly available can be decided if any party seeks to admit the video into evidence.[11]

## VII.  DEFENDANTS HAVE PROVIDED PLAINTIFF WITH A PRIVILEGE AND REDACTION LOG.

Defendants informed Plaintiff in their April 30 letter that they would be providing Plaintiff with a privilege log.  On May 14, 2019, Defendants served Plaintiff with a privilege and redaction log.  *See* Boese Decl. Ex. 24.  To the extent Plaintiff seeks to compel production of a privilege log, such request is moot.[12]

---

[11] To the extent Plaintiff claims that he will not have the ability to introduce the video without it in his possession, Defendants believe a reasonable compromise can be had. Defendants propose that if Plaintiff desires to introduce the video as evidence in support of, or in opposition to, a motion, MSOP can assist Plaintiff with submitting a copy with the Court.

[12] To the extent Plaintiff seeks extra interrogatories due to Defendants' "gamesmanship," ECF No. 92, pp. 16–17, such request should be denied.  As discussed, Defendants served timely responses to Plaintiff's discovery requests, and Plaintiff received documents under the timelines agreed to by the parties.  It is therefore surprising—and frankly, disingenuous—to claim that Defendants are delaying discovery.  The request should be denied.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's motion to compel in its entirety.[13]

Dated:  May 15, 2019.

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Brandon Boese**
BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385
445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1414 (Voice); (651) 282-5832 (Fax)
brandon.boese@ag.state.mn.us

|#4485373-v1

ATTORNEY FOR DEFENDANTS

---

[13] Based on the parties' discussion, Plaintiff's May 7 letter, and Plaintiff's May 13 letter, it no longer appears Plaintiff is seeking Defendants to search every DHS server, hard drive, and email for documents responsive to his request.  But to the extent Plaintiff continues to request this search, it is clearly unduly burdensome and not proportional to the needs of this case.  It would be vastly unduly burdensome for MSOP or DHS to have to search every one of its servers, hard drives, and emails from its hundreds of employees to look for responsive information to Plaintiff's broad requests.  Indeed, in the *Karsjens* class action lawsuit (11-cv-3659 (DWF/TNL)), a search for data using specified search terms of just a single electronic storage drive returned 400 gigabytes of data and 217,000 documents, and DHS estimated it would cost $100,000 to produce such data.  *See Karsjens*, ECF No. 614, p. 2.  To require Defendants to search *all* electronic storage media, including *all* hard drives and *all* employee emails would be vastly disproportionate to the needs of this case.  Defendants conducted a robust effort to search for documents responsive to Plaintiff's broad requests, producing over 500 pages of, among other things, documents related to the incidents Plaintiff raised in his complaint, policies, communications regarding policy changes, training materials, photographs, and incident reports.  Boese Decl. Ex. 22, p. 4.  Defendants reached out to relevant custodians who would be the most likely to have responsive information, and produced any relevant, responsive, and non-privileged documents it found.  *Id.*  This satisfied Defendants' discovery obligations.