UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Ivey, | Civil File No. 12-cv-30 (DWF/TNL) |
| Plaintiff, | |
| vs. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |
| Daniel Williams; Michael Glavan; William Gullickson; Scott Giannini; Tara Halverson; Kevin Dreher; and Matthew Dahl, | |
| Defendants. | |

## INTRODUCTION

Defendants respectfully move the Court for a straight-forward protective order, which will permit the parties to review and designate confidential certain data protected by the Minnesota Government Data Practices Act, including video of certain incidents that purportedly form part of the basis of this lawsuit. Despite attempts to meet and confer with Plaintiff regarding a stipulated protective order, the parties could not agree and Defendants are left with no other choice than to seek a protective order from the Court. Defendants' motion should be granted.[1]

---

[1] Defendants are aware that disagreements between the parties on access to the video form part of the basis of Plaintiff's motion to compel that was filed in May. *See* ECF No. 93. Certain Defendants, however, are no longer employees at MSOP or DHS, and therefore, like Plaintiff, are not permitted to view not public data without a court order. Defendants therefore file this affirmative motion for a protective order out of an abundance of caution, as they indicated they would do so in their opposition brief if the parties were unable to come to an agreement on a stipulation. ECF No. 100, p. 20 n.10. This is to ensure that all Defendants will have access to any documents produced in this case.

## FACTUAL BACKGROUND

On March 29, 2019, the parties engaged in a telephone discussion regarding, among other things, a protective order for the case. *See* ECF No. 103-1, p. 194. Defendants told Plaintiff they were drafting a proposed protective order and would send it to Plaintiff for review, in an effort to submit a stipulated protective order to the Court. *Id.* Plaintiff agreed with this approach. *Id.*

On April 17, contemporaneously with Defendants' document production, Defendants provided Plaintiff with a draft stipulation for a protective order, which, among other things, included language permitting Plaintiff to view video of certain incidents that allegedly underlie his complaint. *Id.* at 197, 199–208. Defendants indicated to Plaintiff that he should sign and return if it was acceptable to him. *Id.* at 197.

Plaintiff then filed a motion to compel wherein he addressed some of his concerns with the proposed order. *See* ECF No. 93, pp. 9–11. As stated in their memorandum in opposition to Plaintiff's motion to compel, Defendants were not provided any notice that Plaintiff had any issues with the proposed protective order sent for Plaintiff's review until Defendants received the motion to compel. ECF No. 100, p. 6.

The parties engaged in a meet-and-confer phone call on May 10, during which Plaintiff continued to express his erroneous belief that Defendants were refusing to permit him to view video of the incident before trial. ECF No. 103-1, pp. 231–32. But as Defendants pointed out to Plaintiff, the Proposed Protective Order explicitly permits him to have access to the video during discovery:

> Defendants may allow Plaintiff to view MSOP security video relevant to this case during a deposition or trial, and *if any such video is discoverable* or filed with the Court by Defendants, Defendants shall give Plaintiff reasonable access to view the MSOP security video upon a request by Plaintiff.

Prop. Ord., ¶ 8 (emphasis added); *see also* ECF No. 103-1, p. 231. Plaintiff also expressed concern that he would not be able to introduce the video as an exhibit if he so desired, but again, Defendants informed Plaintiff that nothing in the proposed protective order limited his ability to introduce the video as evidence. *Id.* Plaintiff also asked Defendants to consider an alternative protective order, but Defendants explained that the particular facts of this case implicated certain privacy rights that were not present in the protective order advocated by Plaintiff. *Id.* at 232. Defendants asked Plaintiff to send them a redlined version of the proposed protective order if he continued to have concerns.

Hearing nothing in response from Plaintiff for weeks, Defendants raised the protective order issue during a June 21 phone call. Ltr. from Defs. to Pl., dated June 25, 2019 (attached as Boese Decl. Ex. 1). During the call, Plaintiff stated he was not satisfied with Defendants' position on the protective order, and desired to wait for the Court to rule on his motion to compel. The parties agreed that they were at an impasse on a stipulation for a protective order. *Id.* The present motion follows.

## ARGUMENT

### I.   LEGAL STANDARD.

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c). Good cause exists "when justice requires the protection of 'a party or person from annoyance,

3

embarrassment, oppression, or undue burden or expense.'" *Polaris Indus. v. CFMOTO Powersports, Inc.*, No. 10-cv-4362 (JNE/HB), 2015 WL 13637322, at *2 (D. Minn. Apr. 27, 2015) (quoting Fed. R. Civ. P. 26(c)).  The Court may specify terms "for the disclosure or discovery" and require that confidential information "not be revealed or be revealed only in a specified way."  *Id.*  R. 26(c)(1)(B), (G).

## II.  GOOD CAUSE EXISTS TO ISSUE A PROTECTIVE ORDER.

The allegations in Plaintiff's Amended Complaint relate to events that allegedly took place at the Minnesota Sex Offender Program.  *See generally* ECF No. 115.  Accordingly, this action involves documents that are protected from public disclosure by the Minnesota Government Data Practices Act ("MGDPA"), Minnesota Statutes chapter 13.  In order to properly defend against Plaintiff's claims, Defendants will need to share such data among themselves, disclose such data to Plaintiff, and file such data with the Court.[2]  The contemporaneously-filed Proposed Protective Order should therefore be issued to allow for such disclosure and to protect this confidential information.

Specifically, data on individuals maintained by MSOP are classified as private data pursuant to Minnesota Statutes section 13.46, subdivision 2(a).  Accordingly, MSOP records, such as incident reports, pertaining to Plaintiff and other MSOP clients are entitled to protection under the MGDPA, and this Court has authority to "fashion and issue any protective orders necessary to assure proper handling of [this] data by the

---

[2] For example, photographs of Plaintiff's room were provided to Plaintiff in discovery, but Defendants that no longer work at DHS cannot view these photographs without an order from the Court.

4

parties." Minn. Stat. § 13.03, subd. 6.  In addition, MSOP security video is classified as nonpublic security data, and is also protected from disclosure under the MDGPA.  *See* Minn. Stat. § 13.37, subd. 1(a); *see also* ECF No. 101-1.  Good cause therefore exists because a protective order will permit certain data that is classified as not public, such as photographs, incident reports, and the security video, to be shared with the Plaintiff and with Named Defendants that no longer work at DHS.  The Proposed Protective Order also sets a fair balance that still permits Plaintiff to view certain not public data, while continuing to protect documents and information that have been deemed not public by the Minnesota Legislature through the MGDPA.

Although Plaintiff expressed concern that the Proposed Protective Order will not provide him access to the video during discovery, this position is not supported by the explicit language of the Proposed Protective Order.  *See* Prop. Prot. Ord., ¶ 8.  And as stated in Defendants' written discovery response to Plaintiff's Request for Documents No. 30, Defendants "will make any [video recording of the incident] available for Plaintiff to view if and when the Court issues a suitable protective order."  ECF No. 103-1, p. 191.

Plaintiff also expressed concern that the Proposed Protective Order would not permit him to introduce the video as an exhibit with any court filing.  Nothing in the Proposed Protective Order, however, limits his ability to introduce this as evidence is he so desires.  *See generally* Prop. Prot. Ord.  Indeed, Defendants added language to ¶ 8 in order to make it explicit that he is not prevented from seeking to admit any MSOP video

of the alleged incidents underlying his complaint in any motion or at trial. *See id.* ¶ 8.[3]

To the extent Plaintiff complains that without possession of the video, he will not be able to introduce the video in filings with the Court, this concern is obviated by Defendants' assertion in its previously-filed memorandum that "if Plaintiff desires to introduce the video as evidence in support, or in opposition to, a motion, MSOP can assist Plaintiff with submitting a copy with the Court." ECF No. 100, p. 21 n.11. Such language has also been included in paragraph 8 of the Proposed Protective Order.

Moreover, as discussed in Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel, it is common for courts to permit individuals who are residing in a secure facility to view video evidence but not possess it. *See, e.g., Donohue v. Lambert*, No. 7:13cv000397, 2015 WL 9581868, at *2 (W.D. Va. Dec. 30, 2015) (stating that defendants permitted Plaintiff to view all available video footage related to his claims complied with Defendants' discovery obligations); *Welch v. Stratton*, No. 2:17-cv-0517, 2018 WL 3219385, at *7 (E.D. Cal. June 29, 2018) (stating that a plaintiff had no need to keep a DVD of the incidents on his person, but ordered the defendant to "coordinate with the litigation coordinator at [the facility] to arrange a time for plaintiff to review the two DVDs and make notes during such review"); *Ball v. Bower*, No. 1:10-cv-2561, 2013 WL 618752, at *2–3 (M.D. Pa. Feb. 19, 2013) (stating that the plaintiff could make arrangements to view video of the incident).

---

[3] Additional language has also been added to the Proposed Protective Order to account for access to documents by Named Defendants who are no longer employed by MSOP, and to include language from the MGDPA regarding access to documents.

Plaintiff has also complained that the Proposed Protective Order limits his access to private data of other clients. *See* Prop. Prot. Ord. ¶ 3 (stating that his access to confidential information "is limited to Confidential information of which he is the data subject"). But he has failed to explain why he requires data that is deemed private data on other individuals in a lawsuit that only challenges alleged actions by specific defendants against him.[4]

Good cause exists because a protective order will permit the parties to review certain data that is deemed not public under the MGDPA, such as documents on Plaintiff and video of certain incidents that underlie the Complaint, without making such data available to the public at large. While Plaintiff has also objected to the Proposed Protective Order on other grounds that are subject to his previously-filed motion to compel (ECF No. 94), Defendants' arguments were fully outlined in its opposition memorandum.[5] The scope of this motion is to simply permit both Plaintiff and Defendants who are no longer employees of the Minnesota Department of Human

---

[4] Plaintiff's discovery requests were extremely broad, and potentially hit on documents that have no relationship to the present lawsuit.

[5] Specifically, Defendants discussed that Plaintiff's request for documents deemed confidential security data should not be disclosed to Plaintiff, and that any conflict over whether a document should be filed under seal in this proceeding can be resolved in the normal course as outlined in the Local Rules. ECF No. 100, pp. 12–21. To the extent the Court believes Defendants must affirmatively move to protect the disclosure of confidential security data to Plaintiff—an MSOP client—Defendants hereby adopt the arguments they made in ECF No. 100 as to why good cause exists to protect such documents from Plaintiff. *See* ECF No. 100, pp. 13–16 (discussing the sensitive nature of documents that would compromise the security and safety of a secure treatment facility). The Proposed Protective Order includes language that is consistent with Defendants' position on nonpublic security data.

7

Services the ability to view certain non-public data, which may be relevant to Plaintiff's claims and Defendants' defenses.

## CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to issue the attached Proposed Protective Order in this case.

Dated: July 17, 2019.                    Respectfully submitted,

                                                   KEITH ELLISON
                                                   Attorney General
                                                   State of Minnesota

                                                 **s/ Brandon Boese**
                                                 BRANDON BOESE
                                                 Assistant Attorney General
                                                 Atty. Reg. No. 0396385

                                                 445 Minnesota Street, Suite 1100
                                                 St. Paul, Minnesota 55101-2128
                                                 (651) 757-1414 (Voice)
                                                 (651) 282-5832 (Fax)
                                                 brandon.boese@ag.state.mn.us

                                                 ATTORNEY FOR DEFENDANTS

|#4524840-v1