# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Christopher Ivey,

            Plaintiff,                      Case No. 12-cv-30 (DWF/TNL)

v.

MSOP, Daniel Williams,                        **ORDER**
Michael Glavan, Steven Sayovitz,
William Gullickson, Scott Giannini, Tara
Halverson, Kevin Dreher, and Matthew
Dahl,

            Defendants.

---

Christopher Ivey, 1111 Highway 73, Moose Lake, MN 55767 (pro se Plaintiff); and

Brandon L. Boese, Assistant Attorney General, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101 (for Defendants)

---

This matter is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 93), Plaintiff's Motion to Deny Confidential Designation (ECF No. 97), and Defendants' Motion for Protective Order (ECF No. 121). For the reasons set forth below, the Court will grant in part and deny in part the motion to compel, deny without prejudice the motion to deny confidential designation, and grant in part and deny in part the motion for protective order.

## I. BACKGROUND

On January 5, 2012, Plaintiff Christopher Ivey filed an 18-count complaint against the Minnesota Sex Offender Program ("MSOP") and several staff members, alleging they

1

violated his civil rights following an incident in his room in November 2011. (Compl., ECF No. 1). Multiple rounds of motion practice have reduced the complaint to the following: excessive force claims against Defendants Daniel Williams, Michael Glavan, William Gullickson, Scott Giannini, Tara Halverson, and Matthew Dahl; a battery claim against Glavan; and Fourth Amendment claims against Defendants Kevin Dreher, Dahl, and Gullickson. Defendants answered the complaint on March 5, 2019.

While one of the motions-to-dismiss was pending, Ivey served written discovery on Defendants, including requests for the production of documents. (ECF No. 103-1, pp. 5-17). Among other things, Ivey sought documents related to the use of handcuffs at MSOP, the use of certain techniques to detain or subdue MSOP patients, and video footage related to the incident in question. (*Id.*, pp. 10-17). Defendants objected to Ivey's requests on a number of grounds, including that certain documents Ivey sought were classified as non-public security data under the Minnesota Government Data Practices Act ("MGDPA"). (*Id.*, pp. 169-192).

On April 17, 2019, Defendants produced over 500 pages of documents in response to Ivey's discovery requests. (*Id.*, p. 197). Defendants also provided Ivey a proposed protective order, which they contended would provide Ivey reasonable access to video footage. (*Id.*, pp. 203-04). Defendants continued to withhold documents that they contended contained non-public security data, including documents that "outline in a play-by-play fashion MSOP's strategies and tactics in addressing clients who are out of behavioral control." (ECF No. 102, p. 2).

On May 2, 2019, Ivey filed a motion to compel production of documents responsive to certain requests and to prohibit Defendants from designating certain material as confidential once a protective order was issued. (ECF Nos. 93, 97). Ivey took issue with Defendants' decision to withhold documents on the grounds that the MGDPA prohibited their disclosure, Defendants' argument that security concerns prohibited them turning certain documents over, Defendants' failure to provide a privilege log, and Defendants' use of boilerplate objections. (ECF No. 93).

Shortly after Ivey filed his motion, he sent a letter to Defendants' counsel. (ECF No. 103-1, pp. 224-29). He indicated that he had reviewed Defendants' document production and that disagreements remained regarding the following topics: (1) a description of certain information redacted from Defendants' discovery responses; (2) a description of training courses related to handcuffing procedures; (3) a description of training that Defendants received regarding the use of handcuffs; (4) personal responses to interrogatories from each Defendant; and (5) a copy of an unpublished case that Defendants cited to him in a letter. (*Id.*, pp. 228-29). Ivey also provided additional information regarding his own responses to Defendants' discovery requests. (*Id.* at 224-25).

The parties then spoke by telephone on May 10, 2019. (ECF No. 100, p. 7). In that conversation, the parties appeared to resolve several issues related to this motion. Shortly after that telephone call, Defendants responded to Ivey's motions. Defendants contend the following issues remain in dispute: (1) whether they should be required to produce documents containing security information; (2) whether they should be required to produce documents containing private data on individuals other than Ivey; (3) whether Defendants

are providing Ivey reasonable access to the videos; and (4) whether any video of the incidents should be designated as confidential. Defendants argued that Ivey's motion regarding the confidential designation of certain materials was premature, as the Court had not yet issued a protective order and because neither party had designated materials as confidential.

Defendants then filed a motion for a protective order. (ECF No. 121). Defendants contend a protective order is necessary because this action implicates documents protected from public disclosure under state law. Defendants further contend the protective order should prohibit the disclosure of confidential security data.

## II. ANALYSIS

The Court begins with Ivey's motion-to-compel. As Defendants note, Ivey did not meet and confer with them before filing either of his motions. Local Rule 7.1 requires a meet-and-confer occur before or immediately after the moving party files his motion. In this case, the parties conferred shortly after Ivey filed the motions and, according to Defendants, were able to substantially narrow the issues before the Court. Based on Defendants' representations, the Court will address only the issues that Defendants identify as disputed following the meet and confer.

Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). To

determine whether the discovery requested is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party may move to compel a response from a party who fails to answer an interrogatory under Rule 33 or fails to produce a document requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). This Court "has considerable discretion in granting or denying discovery requests[.]" *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 534 (D. Minn. 2008).

Defendants cannot meaningfully dispute the relevance of security information to Ivey's claims. To bring an excessive force claim, Ivey "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). In making this determination, the following factors are considered:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 2473. The factfinder must also "account for the legitimate interests that stem from [the government's] need to manage the facility" by "deferring to policies and practices that . . . are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (citation and internal quotation marks omitted). Thus, information related to MSOP's security policies and procedures, including how they train officials to enforce

5

those policies and procedures, undoubtedly would be relevant to this case. Defendants admit as much in their answer, where they indicate they may raise the defense that they "acted under authority of statute, rule, or other applicable law or policy." (ECF No. 87, p. 30).

The same logic applies to Ivey's requests for documents that might implicate the private information of other individuals, which include reports of excessive force or improper handcuffing. Not only might the use of force or handcuffs in other instances inform the policies and procedures adopted by MSOP, documents related to previous complaints themselves are relevant to excessive force claims. *See Her v. Paulos*, No. 11-cv-808, 2012 WL 6634777, at *6 (D. Minn. Dec. 20, 2012). Ivey has therefore met his burden to establish the information that he seeks is relevant to his claims. The Court thus considers whether Defendants have identified valid reasons why Ivey is not entitled to this discovery.

Defendants first note that many of the documents that Ivey seeks are protected by the MGDPA. This argument is without merit. Courts in this district have held that the MGDPA does not trump the Federal Rules of Civil Procedure. *See id.; see also Scheffler v. Molin*, No. 11-cv-3279, 2012 WL 3292894, at *4 (D. Minn. Aug. 10, 2012). Nor may Defendants argue the MGDPA *requires* them to obtain a court order before turning over discoverable information. The provision of the MGDPA that Defendants rely on, Minnesota Statutes section 13.03, subd. 6, requires state courts apply a two-part test to determine if MGDPA-protected data should be disclosed "*[i]f* a government entity opposes discovery of government data . . . on the grounds that the data are classified as not public."

(emphasis added). Nothing in this subdivision *requires* the government to oppose a discovery request on MGDPA grounds and even if it did, that subdivision would not apply in federal court and would not require the Court to apply its two-part test. *See Her*, 2012 WL 6634777, at *6 (citing 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2005 (3d ed. 2010) (explaining that state discovery practices are irrelevant to discovery conducted in federal court)). As this Court (and other courts in this district) have explained before, the MGDPA provides no basis for a federal litigant to object to discovery.

The Court may, however, utilize its broad authority to manage discovery and issue protective orders to consider the arguments that underly Defendants' MGDPA claim. Fed. R. Civ. P. 26(b), (c). Setting aside their reliance on the MGDPA, Defendants make two arguments in opposition to Defendants' discovery requests. First, they argue that disclosure of non-public security data to a MSOP patient would jeopardize MSOP staff's ability to maintain control over the facility, as MSOP patients would become familiar with the security strategies that MSOP officials use to maintain safety. Second, Defendants argue that Ivey does not need access to documents that contain private information on other individuals. Each argument has some merit. Courts often consider institutional security when evaluating discovery requests by a pro se litigant who housed at that facility. *See e.g.*, *Gilmore v. Lockard*, No. 12-cv-925, 2015 WL 5173170, at *5-*6 (E.D. Cal. Sept. 3, 2015) (denying inmate's request for housing roster because doing so would compromise institutional security); *Norman v. Wrolstad*, 06-cv-10, 2007 WL 2729073, at *1-*2 (D.N.D. Sept. 17, 2007). They also consider whether the proposed discovery would subject a person to annoyance or embarrassment. *See* Fed. R. Civ. P. 26(c). Thus, the Court will consider

whether the security and privacy concerns that Defendants identify justify relief from Ivey's discovery requests. *See* Fed. R. Civ. P. 26(b).

In this case, Defendants have identified very real security concerns regarding the discovery that Ivey seeks. For some of the disputed discovery, like the videotapes of the incident, Defendants have proposed that Ivey be allowed reasonable access to the material without allowing it to remain in his permanent possession. This is a sensible compromise. The Court will order that any videotapes be made available to Ivey on those conditions.

Defendants argue, however, that Ivey's mere access to other materials would compromise institutional security and violate the privacy interests of other individuals. Given the relevance of this discovery to Ivey's claims, the Court must attempt to craft a solution that allows Ivey access to the materials necessary to present his case while alleviating Defendants' security concerns.

In this case, the appropriate solution is to permit Ivey access to material containing confidential security information or private information on other individuals but, consistent with Defendants' proposal regarding the videotapes, not allow him to retain possession or control of it. The Court will therefore order that Defendants designate a representative who shall take possession of the disputed discovery. That representative shall provide Ivey **reasonable and timely access** to the documents as necessary for Ivey to pursue his claims. Ivey shall be allowed to review those materials in the presence of the representative, but may not remove them from the room. Any notes that Ivey takes regarding the content of those documents must also remain with the documents themselves. The Court will also issue a protective order that allows Defendants to designate certain material as confidential.

The Court reminds Ivey that, subject to limited exceptions, its protective order prohibits Ivey from revealing any information that Defendants designate as confidential to any third party. Under no circumstances should the protective order be interpreted to permit Ivey to reveal confidential information to another MSOP patient. To further limit the disclosure of sensitive information, the Court will also permit Defendants to redact personal identifying information related to other MSOP patients from those documents, as well as information containing critical security information, such as passwords, security codes, location of alarms, and the like.[1]

The Court will not, however, issue the protective order proposed by Defendants. Instead, the Court will issue a protective order that is largely consistent with that found on the District's website. The Court is troubled by Defendants' proposed order. First, the proposed order would permit Defendants to withhold documents unilaterally that they contend are protected by the MGDPA, which as the Court explained above, has no place in civil discovery in federal court. Second, Defendants' proposed order would not only allow them to withhold certain information from Ivey for his own use, it would actually permit Defendants to use that information and *even file it with the Court* without Ivey having a chance to review and respond to it. (*See* ECF No. 126, p. 6). Trial by ambush has long been prohibited in federal court. *See Fed. Reserve Bank of Minneapolis v. Carey-Canada, Inc.*, 123 F.R.D. 603, 606 (D. Minn. 1988). The standard District protective order is more than adequate to address the parties' concerns. The Court will enter that order, with

---

[1] In reaching this decision, the Court takes no position on whether the scope of Ivey's discovery requests, including the timeframe for which he seeks documents and the fact that he has requested substantial documents related to other complaints, is proportional to the needs of this case.

9

some slight modifications.

Finally, Ivey has moved for an order prohibiting Defendants from designating certain information as confidential under the terms of the protective order. This motion is premature.[2] No protective order has been issued yet and no documents have yet been designated as confidential. In addition, the protective order contains a mechanism that allows Ivey to challenge the confidential designation of any document, should he deem it appropriate to do so. The Court will deny this motion without prejudice.

## III. CONCLUSION

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion to Compel Discovery (ECF No. 93) is **GRANTED IN PART AND DENIED IN PART** as follows. Within 30 days of the date this Order is filed, Defendants shall provide all outstanding discovery, including any videotapes, that they would designate as confidential under the terms of the protective order to a MSOP representative. That representative shall provide Ivey reasonable and timely access to those materials. Ivey may review those documents, but may not remove them from the custody of the representative. Any notes Ivey takes regarding those materials must also remain in the custody of the representative, who may not discuss their contents with Defendants or their counsel. Defendants may redact any personal identifying information related to other

---

[2] Ivey previously moved for 10 additional interrogatories as a sanction for Defendants' delay in responding to discovery requests. He withdrew that request in a subsequent letter to the Court. (ECF No. 119).

MSOP patients from those documents as well as sensitive security information as described above.

2. Plaintiff's Motion to Deny Confidential Designation (ECF No. 97) is **DENIED WITHOUT PREJUDICE**.

3. Defendants' Motion for Protective Order (ECF No. 121) is **GRANTED IN PART AND DENIED IN PART** as follows. The Court will issue a modified version of the District's standard protective order.

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: July 30, 2019          *s/ Tony N. Leung*
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota

                                          *Ivey v. MSOP, et al.*
                                          Case No. 12-cv-30 (DWF/TNL)