## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Christopher Ivey,

              Plaintiff,                    Case No. 12-cv-30 (DWF/TNL)

v.

MSOP, Daniel Williams,                        **ORDER**
Michael Glavan, Steven Sayovitz,
William Gullickson, Scott Giannini, Tara
Halverson, Kevin Dreher, and Matthew
Dahl,

              Defendants.

Christopher Ivey, 1111 Highway 73, Moose Lake, MN 55767 (pro se Plaintiff); and

Brandon L. Boese, Assistant Attorney General, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101 (for Defendants)

This matter is before the Court on Defendants' Motion for Protective Order. (ECF No. 146). For the reasons set forth below, the Court will grant in part and deny in part the motion.

## I.    BACKGROUND

Plaintiff Christopher Ivey alleges that several staff members of the Minnesota Sex Offender Program ("MSOP") violated his civil rights by the way they responded to an incident in his room in November 2011. (ECF No. 115). In particular, Ivey claims that MSOP staff used excessive force, violated his Fourth Amendment rights and committed the tort of battery against him.

1

Earlier this year, the parties engaged in substantial motion practice regarding certain documents that Defendants sought to withhold from discovery on the grounds that they contained confidential security information. The Court ordered Defendants to disclose those documents subject to certain conditions, including that they be left in the custody of a MSOP representative. (ECF No. 130). The Court also permitted Defendants to redact sensitive security information from those documents. (ECF No. 130).

On August 12, 2019, Ivey served Defendants with a set of document requests. (ECF No. 149-1, pp. 2-8). Ivey sought training videos and materials associated with certain MSOP staff training courses. (*Id.*, pp. 7-8). In response, Defendants produced approximately 60 documents, totaling over 800 pages. (ECF No. 149, p. 1).

Defendants also moved for a protective order regarding two documents that were responsive to Ivey's August 12 requests. (ECF No. 146). The first document is a PowerPoint presentation entitled "Incident Command System Refresher." (ECF No. 155-1, pp. 86-151). It describes how incident command systems are managed at MSOP, including how staff members communicate with each other when responding to certain events. The second document is entitled "Personal Safety Techniques (PST)." (ECF No. 155-1, pp. 3-84). It is a training manual regarding certain techniques used to de-escalate dangerous situations at MSOP. It includes photographs of those techniques, instructions, information about when those techniques should be used, and their risk of injury. Defendants argue, as they did in their previous motion, that the disclosure of this information to a MSOP patient would compromise institutional security. They also claim that Ivey could obtain this information through other forms of discovery.

Ivey does not object to the withholding of portions of the PowerPoint presentation that contain information about incident command systems and procedures for communicating between staff. He does, however, object to the withholding of any portion of the training manual that describes techniques that are related to his claims. The Court conducted an *in-camera* review of both documents and took the motion under advisement following receipt of Ivey's memorandum of law on October 15, 2019.

## II.   ANALYSIS

Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). To determine whether the discovery requested is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" due to a discovery request. Fed. R. Civ. P. 26(c)(1).

As the Court previously noted (ECF No. 130), to bring a successful excessive force claim, Ivey must show "that the force purposely or knowingly used against him was

objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This

determination will be made based on several factors, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. at 2473. The factfinder will also need to "account for the legitimate interests that stem

from [the government's] need to manage the facility" by "deferring to policies and

practices that . . . are needed to preserve internal order and discipline and to maintain

institutional security." *Id*. (citation and internal quotation marks omitted).

As a result, information related to MSOP's security policies and procedures,

including when the use of force is authorized and what techniques MSOP staff may use to

subdue patients is highly relevant to Ivey's claims. Information like this is ordinarily

discoverable in an excessive force case. But because Ivey is proceeding *pro se* and is a

patient at MSOP, the Court must also balance the relevance of the information he seeks

against the possibility that its disclosure might harm institutional security. *See e.g.*, *Gilmore*

*v. Lockard*, No. 12-cv-925, 2015 WL 5173170, at *5-*6 (E.D. Cal. Sept. 3, 2015) (denying

inmate's request for housing roster because doing so would compromise institutional

security); *Norman v. Wrolstad*, 06-cv-10, 2007 WL 2729073, at *1-*2 (D.N.D. Sept. 17,

2007). The Court will address each document in turn.

The first document, the PowerPoint presentation entitled "Incident Command

System Refresher" (ECF No. 155-1, pp. 86-151) contains information that is of little

relevance here. The purpose of the PowerPoint is to instruct staff how to communicate with

another during certain incidents. It contains virtually no information regarding the use of

force at MSOP. This document is unlikely to help Ivey prove his claims. Ivey himself

admits as much in his memorandum.

Disclosure of the PowerPoint would, however, implicate the security of MSOP. The

PowerPoint contains specific information regarding the way in which MSOP staff

communicate with one another when responding to certain incidents. A patient who gained

access to a staff radio would know how to report an incident, and could use that information

to imitate a MSOP staff member. It would, in short, allow MSOP patients to "more easily

counter the anticipated processes MSOP staff use to maintain behavioral control." (ECF

No. 150, p. 2). Because the risks that disclosure would pose outweigh the relevance the

document has to this litigation, the Court finds there is good cause to grant the motion for

a protective order as to the Incident Command System Refresher PowerPoint.

The second document, a manual entitled "Personal Safety Techniques (PST)" (ECF

No. 155-1, pp. 3-84), contains information that is highly relevant to Ivey's claims. The

manual explains when MSOP staff should use force, when they should escalate the use of

force, and what injuries might result from the use of force. In fact, the document contains

specific instructions regarding the use of some of the very techniques that Ivey alleges were

used against him. Information like this is critical to assessing Ivey's claims.

The importance of this information outweighs the institutional concerns of MSOP.

Though true that disclosure of this document might pose some risk to MSOP's institutional

security, the level of detail in this document is similar to that contained in other documents

the Court previously ordered Defendants to turn over, including a document that instructed

MSOP staff on how to extract patients from their room. (*See* ECF No. 144-1, pp. 43-56).

Accordingly, for the same reasons the Court identified in its previous Order (ECF No. 130),

the Court concludes that any risk that disclosure would pose to institutional security is

mitigated by limiting Ivey's access to the manual in a manner that is consistent with the

Court's previous Order (ECF No. 130) and the Protective Order (ECF No. 131). In

addition, because Ivey does not object to Defendants redacting information related to

techniques not alleged to have been used here, the Court will permit Defendants to redact

all information that does not relate to the following techniques: (1) arm bar; (2) wrist lock;

(3) rear wrist lock; or (4) any technique that requires the detaining staff member (or

members) to use his or her hands to "torque the [patient's] arm straight up behind the

[patient's] body [and] then bend the [patient's] wrist towards the [patient's] body and

maintain[] pressure[.]" (ECF No. 156, p. 2).

In reaching this decision, the Court has considered Defendants' claim that Ivey

could have obtained this information through other forms of discovery, including

depositions or interrogatories. The Court does not find this argument persuasive. As the

District Judge in this case recently noted, there is no reason to deny Ivey, a *pro se* litigant,

access to highly relevant information on the basis that he might know how to obtain the

information from other sources. (ECF No. 143, p. 5). Though Ivey has proven himself

capable of litigating this matter, the Court will must still take into account his lack of formal

legal education and training when considering whether his document requests were

appropriate.

In addition, the Court is not convinced that depositions or interrogatories would

have been a more effective way to obtain information that Defendants consider confidential. Defendants have been reluctant to share information that they believe would inhibit institutional security. Though Defendants' apprehension is understandable, the Court is unsure why they claim they would be willing to share confidential security information if Ivey requested it through an interrogatory or deposition question. It would seem to the Court that Defendants would object to providing any sort of confidential security information, regardless of the manner by which Ivey requested it. Thus, it seems unlikely that other forms of discovery would resolve the parties' dispute.

Finally, the record establishes that Ivey attempted to obtain this information in other ways. As he notes, he previously served interrogatories on Defendant Michael Glavan, seeking information regarding his training and his alleged use of force on Ivey. (ECF No. 156, pp. 3-4). In response, Glavan stated that his "actions . . . were conducted in a manner consistent with his training and applicable MSOP security procedures, given Plaintiff's conduct." (ECF No. 156, p. 5). Thus, when given the opportunity to provide the information that Ivey requested through an interrogatory, Defendants simply directed Ivey to MSOP's policies and procedures. Given this response, it was quite reasonable for Ivey to then request the policies and procedures themselves. The Court will therefore not impose a protective order on the grounds that Ivey could have obtained this information through other means of discovery.

### III.    CONCLUSION

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1.  Defendants' Motion for Protective Order (ECF No. 146) is **GRANTED IN PART**

**AND DENIED IN PART** as follows:

    a.  Defendants may withhold from discovery the document entitled "Incident Command System Refresher." (ECF No. 155-1, pp. 86-151).

    b.  Within 14 days of the date this Order is filed, Defendants shall disclose, in a manner that is consistent with the Protective Order (ECF No. 131) and the Court's July 30, 2019 Order (ECF No. 130), the document entitled "Personal Safety Techniques (PST)." (ECF No. 155-1, pp. 3-84). Defendants may redact all information in that document that does not relate to the following techniques: (1) arm bar; (2) wrist lock; (3) rear wrist lock; or (4) any other technique that requires the detaining staff member (or members) to use his or her hands to torque the patient's arm straight up behind the patient's body and then bend the patient's wrist towards the patient's body and maintain pressure.

2.  All prior consistent orders remain in full force and effect.

[continued on next page]

3. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.


Date: December 3, 2019                   *s/ Tony N. Leung*
                                         Tony N. Leung
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Ivey v. MSOP, et al.*
                                         Case No. 12-cv-30 (DWF/TNL)